**GENERAL DYNAMICS, Material Service Corp., and El Paso Sand, Inc., Appellants,**

v.

**Louis TORRES, Appellee.**

**No. 08–94–00199–CV.**

Court of Appeals of Texas, El Paso.

Nov. 30, 1995.

Rehearing Overruled Jan. 24, 1996.

G. Luke Ashley, Thompson & Knight, Stephen C. Schoettmer, Thompson & Knight, Dallas, for Appellants.

C.R. Kit Bramblett, Bramblett & Bramblett, El Paso, Woodrow W. Bean, II, El Paso, for Appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

CHEW, Justice.

Appellants, a publicly owned family of corporations, are sued by Appellee Louis Torres, as representative of a partnership of former officers of the Appellant subsidiary, El Paso Sand, Inc., for breach of an equipment lease agreement between the partnership and El Paso Sand. Judgment was entered against the Appellants after a non-jury trial. The trial court entered findings of fact and conclusions of law and a complete statement of facts is before the Court. The only issue we reach is whether the lease is valid and enforceable against the corporate family. We reverse and render.

In 1984, Richard Levy, Louis Torres, and Donald R. McCoy were officers or managers of El Paso Sand. El Paso Sand was a wholly owned subsidiary of Material Service Corporation, and Material Service was a wholly owned subsidiary of General Dynamics, a publicly held corporation. Levy was then president; McCoy was a vice-president and later president; and Torres was the manager of construction. The three men formed a partnership, LTM, to buy a portable hot mix plant[1] for $250,000, intending to resell it in Mexico. Unsecured financing of the purchase price was provided by Texas Commerce Bank—El Paso ("TCB"). When LTM

---

1. Construction equipment used to produce aggregate–asphalt mixtures for street and highway paving.

failed to sell the plant, they leased it to El Paso Sand. About one year later, LTM sold the plant for $350,000 to Desert West, Inc., which leased the plant back to El Paso Sand. The LTM partners realized a $100,000 profit from the sale.

Eighteen months later, LTM had to repurchase the plant when Desert West failed. TCB lent them the repurchase price of $350,000. McCoy and Torres individually signed the loan note, and Levy signed a personal guaranty of the loan. The note was secured by the plant itself and an assignment to TCB of a concurrently executed lease for the plant between El Paso Sand and LTM. Torres signed the lease on behalf of LTM and McCoy signed it on behalf of El Paso Sand. Material Service and General Dynamics were not parties or signatories to the lease. The lease obligated El Paso Sand "to pay monthly to [LTM] a sum equal to the five (5) year amortization schedule [on the LTM note] plus interest as charged per month by Texas Commerce Bank–Northgate...." Pursuant to the lease, El Paso Sand made the lease payments directly to TCB as payment on the note.

McCoy was killed in a plane crash in February, 1988. His death triggered a corporate audit of El Paso Sand which resulted in the termination of Levy and Torres. At the same time, El Paso Sand stopped making the lease payments to TCB. The plant, however, remained in use at El Paso Sand for several more months. The note became delinquent, and TCB made demand for payment on McCoy's estate, Levy, and Torres. Litigation over the delinquency between TCB on one side and McCoy's estate, Levy, and Torres on the other, ended in settlement. TCB foreclosed upon and sold the hot mix plant.

In March 1990, Torres filed this suit against El Paso Sand and its parent corporations seeking damages for breach of the lease. In March 1993, McCoy's estate intervened in the suit and suit was amended to reflect that Torres was bringing suit as the representative of the LTM partnership. The parties tried the case to the court. At the close of Torres' case, the Appellants moved for directed verdict and rested without putting on any evidence. The trial court

entered a Corrected Judgment in favor of Torres, as representative of the LTM partnership, against Appellants for $71,075.64, plus pre-judgment interest, and attorney's fees. Appellants appeal the judgment in six points of error and Torres raises three cross-points of error.

In Points of Error Two and Three, Appellants argue that the trial court erred in granting judgment in favor of the LTM Partnership because of the LTM partners' self-dealing in breach of their fiduciary duties to El Paso Sand voided the lease. The partners, Appellants allege, failed to sustain their burden as corporate fiduciaries to prove that the lease was fair to El Paso Sand. We consider these points together as a "no evidence" or legal sufficiency challenge.

When an Appellants attacks the legal sufficiency of evidence to support an adverse finding on an issue on which she or he did not have the burden of proof, she or he must demonstrate that no evidence supports the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). In considering a "no evidence" legal insufficiency point, we consider only the evidence and inferences which tend to support the findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). A "no evidence" point fails if there is a mere scintilla of evidence to support the challenged finding. *U.S. Fire Ins. Co. v. Ramos,* 863 S.W.2d 534, 538 (Tex. App.—El Paso 1993, writ denied).

In a non-jury trial, the trial court's findings are generally entitled to the same weight and dignity as a jury's findings. When both findings of fact and a complete statement of facts are part of the record, the findings of fact are not conclusive and are reviewable for legal and factual sufficiency. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). The legal conclusions of the trial court are always reviewable *de novo* by the appellate court. The trial court's legal conclusions are not entitled to any particular deference. *Purvis Oil Corp. v. Hillin,* 890 S.W.2d 931, 935 (Tex.App.—El Paso 1994, no writ); *Cap Rock Electric Coop., Inc. v. Texas*

*Utilities Electric Co.,* 874 S.W.2d 92, 99 (Tex. App.—El Paso 1994, no writ).

Nearly everywhere, and certainly in Texas, it is well established that officers of a corporation, by virtue of their authority, privileges and trust, have a strict fiduciary obligation to their corporation. *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 576 (Tex.1963). With this obligation goes responsibility and accountability. *Id.* Directors and officers of a corporation occupy a fiduciary position and, as such, owe a duty of loyalty to the corporation. *Poe v. Hutchins,* 737 S.W.2d 574, 584 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). The duties of officers and directors are not identical to those of other fiduciaries; rather, they are defined by case law to include an "extreme measure of candor, unselfishness, and good faith." *Holloway,* 368 S.W.2d at 577; *State Banking Board v. Valley National Bank,* 604 S.W.2d 415, 417 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.). Corporate directors and officers are held to an extreme measure of honesty, unselfishness, and good faith in any transaction involving self-dealing, such as the one in controversy in this case. *See Holloway,* 368 S.W.2d at 577. Corporate fiduciaries "have no more right to divert corporate opportunities and make them their own than they have to appropriate corporate property." *Canion v. Texas Cycle Supply, Inc.,* 537 S.W.2d 510, 513 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.). Once a fiduciary relationship is established, a presumption arises that such interested transactions between corporate fiduciaries and their corporations are unfair on the part of the officer or director and fraudulent upon the corporation. *Holloway,* 368 S.W.2d at 576; *Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 507 (Tex.1980).

The director or officer of a corporation must make full disclosure of all pertinent information in relation to subject matter of any contract he or she negotiates with the corporation in which he or she has a personal interest. *Dowdle v. Texas American Oil Corp.,* 503 S.W.2d 647, 651 (Tex.Civ.App.—El Paso 1973, no writ). Such transactions are not void but voidable for unfairness and fraud at the option of the corporation. An interested officer seeking to enforce such a transaction against the corporation has the burden of proving the utmost fairness and good faith of the transaction, and the courts will scrutinize the transaction closely. *Holloway,* 368 S.W.2d at 576. Necessary, but not exclusive, factors to be considered in determining inherent fairness and good faith of an interested transaction are adequacy of consideration, the degree to which the officer represented the corporation, the disclosure to and knowledge of the full board of directors or shareholders, and the necessity of the transaction to the corporation. *Tenison v. Patton,* 95 Tex. 284, 67 S.W. 92, 95 (1902).

The undisputed evidence in the record establishes that there was a fiduciary relationship between each of the LTM partners and El Paso Sand. McCoy and Levy were officers of El Paso Sand. Torres was a manager and a "key man." Torres represented himself to be an officer at various times, but most importantly, on the financial statement he submitted to TCB for the note. The evidence is undisputed that the subject lease involved a corporate opportunity and interest appropriated by the LTM partners for their personal profit. The partnership bought the plant expecting a quick resell. When that did not happen, LTM leased the plant to El Paso Sand until it sold. When LTM was finally able to sell the plant at a profit of $100,000, Desert West, the new owner, leased it back to El Paso Sand. Eighteen months later, the LTM partners were obliged to borrow $350,000 to repurchase the plant when Desert West defaulted. LTM used the plant and a new lease with El Paso Sand as collateral, and structured the lease payments to service the debt. This evidence is sufficient to establish that El Paso Sand had an opportunity to purchase or lease a piece of equipment useful for its operations, but instead Levy, Torres, and McCoy purchased the equipment and leased it to El Paso Sand in order to finance a $100,000 profit for themselves.

There is no evidence as to adequacy of consideration, fairness of the lease payments, or any other factor which would support a finding of fairness or good faith in this transaction. The only evidence submitted by Tor-

res regarding fairness of the lease payments was the testimony of a former El Paso Sand employee, whose opinion as to fair market rentals for the plant was stricken by the trial court. On appeal, Torres does not challenge the undisputed facts that he and his partners were corporate fiduciaries who usurped a corporate opportunity and realized a personal profit through a lease involving self-dealing. Torres does not even contend that there is evidence of fairness of the transaction. The presumptive unfairness and fraud of this transaction stand unrebutted in any respect by Torres. Thus, Torres failed to carry his burden to prove the utmost fairness and good faith of the transaction.

Nevertheless, Torres insists that the transaction is still valid and enforceable because the Appellants ratified it. It is the general rule in Texas that transactions between corporate fiduciaries and their corporation are capable of ratification by the shareholders or, as occurs more commonly, by the board of directors' specific approval or acquiescence, laches, or acceptance of benefit. *Pruitt v. Westbrook*, 11 S.W.2d 562 (Tex. Civ.App.—Fort Worth 1928, no writ); *Wiberg v. Gulf Coast Land & Development Co.*, 360 S.W.2d 563, 567 (Tex.Civ.App.—Beaumont 1962, writ ref'd n.r.e.). Ratification by any means, however, is effective only when the officer has fully disclosed all of the material facts of the transactions to the board of directors or shareholders. *See Vessels v. Anschutz Corp.*, 823 S.W.2d 762 (Tex.App.—Texarkana 1992, writ denied). The only evidence which bears on the knowledge of the El Paso Sand's board of directors is that of Ralph Scoggins. Scoggins, legal counsel for El Paso Sand during the time period relevant to the lawsuit, testified that Levy told him that Levy had "cleared" the transaction with the President of the El Paso Sand's parent corporation, Material Service. Scoggins further testified that Levy told him that factually similar interested transactions are "common practice in Chicago if it was no problem here."

Obviously, the trial court accepted this contention because it made findings of fact that: (1) it was common practice for corporate officers and "key men" to enter into investment opportunities with all three corporations; (2) that Appellants received a benefit from the lease; (3) that El Paso Sand used the plant four months after it ceased making lease payments; and (4) that during that four-month period El Paso Sand manufactured more than a million dollars worth of product. These findings do not, however, support the trial court's conclusion that the lease transaction was enforceable against El Paso Sand and its parent corporations on a ratification theory. At best, Scoggins' testimony only proves that the president of Material Service Corporation knew of the lease. Scoggins' testimony is no evidence that the LTM partners fully disclosed all of the material facts of the transaction to the board of directors or shareholders of El Paso Sand as required by the reasoning in Vessels. The probative value of the Scoggins testimony also is questionable because it is clearly hearsay admitted over the objection of the Appellants. See Tex.R.Civ.Evid. 802. While El Paso Sand did gain use and production from the plant both before and after the lease payments ceased, without evidence that El Paso Sand's board of directors had full knowledge of all material facts regarding the lease, there cannot be acceptance of benefits or laches sufficient to support ratification of the lease contract. There is simply no showing that any benefit El Paso Sand may have received from the plant came at a fair price.

Additionally, there can be no ratification of "an act which is not done in behalf of. . . ." the corporation. "[R]atification can only be effectual between the parties involved when the [fiduciaries'] act is done openly and admittedly for the [corporation], and not when done for the [fiduciaries'] expressed benefit. . . ." *Herider Farms–El Paso, Inc. v. Criswell*, 519 S.W.2d 473, 477–78 (Tex.Civ.App.—El Paso 1975, writ ref'd n.r.e.). We find simply no evidence in the record that the transaction was done for the express benefit of the corporation; on the contrary, it is undisputed that this transaction and those that preceded it were done for express purpose of the LTM partners' enrichment.

■ In this kind of self-interested transaction involving corporate officers, the fiduciary burden imposed upon an officer of a corporation to prove the fairness of her or his profits and the inherent good faith of her or his actions, do not permit this Court's sufferance of the admitted self-serving breach of the trust reposed in these corporate officers. We believe it to be the rule in Texas that ratification is not available to condone a corporate officer or director's disloyalty or fraud. We therefore sustain Appellants' Points of Error Two and Three.

Because of our disposition of Appellants' second and third points of error, we find it unnecessary to reach the remaining points. The judgment of the trial court is reversed and judgment is rendered in favor of Appellants.