TOHATO, INC., (FORMERLY TOHATO SEIKA CO., LTD.), A JAPANESE CORPORATION, PLAINTIFF V. PINEWILD MANAGEMENT, INC., A VIRGINIA CORPORATION, AND COUNTRY CLUB OF PINEWILD MANAGEMENT, INC., A NORTH CAROLINA CORPORATION, DEFENDANTS V. CLUBCORP REALTY HOLDINGS, INC., ON BEHALF OF ITSELF, INDIVIDUALLY AND ON BEHALF OF PINEWILD REALTY MASTER JOINT VENTURE, INTERVENING DEFENDANT

No. COA97-550

(Filed 20 January 1998)

## 1. Appeal and Error § 443 (NCI4th)— motion to dismiss— intent to appeal—not in notice

The denial of defendants' motions to dismiss was not before the appellate court since defendants failed to specify their intent to appeal that part of the trial court's order in their respective notices.

## 2. Arbitration and Award § 24 (NCI4th)— limited partnership agreement—arbitration clause—inapplicability to disputed issues

Under Texas law, a limited partner's derivative action seeking to terminate service contracts entered on behalf of the limited partnership did not come within the arbitration clause in the lim-

ited partnership agreement where the arbitration clause permits arbitration when the management committee deadlocks and the failure of the management committee renders the operation of the partnership impracticable, and even if there is a deadlock in the management committee, there is no evidence that the failure of the committee to act has rendered the continued operation of the partnership impracticable in that the partnership has continued to operate since this action was filed and is expected to continue to operate into the foreseeable future.

**3. Partnership § 22 (NCI4th)— limited partner—authorization of derivative suits**

A limited partnership agreement's specific authorization of derivative suits by the limited partner controlled over the general requirement in the agreement for management committee approval for litigation.

**4. Arbitration and Award § 14 (NCI4th)— right to arbitration—burden of proof**

A party to a contract who seeks to compel arbitration under Texas law must first establish his right to that remedy under the contract.

Appeal by defendants and intervening defendant from order entered 24 March 1997 by Judge W. Douglas Albright in Moore County Superior Court. Heard in the Court of Appeals 20 November 1997.

*Beaver, Holt, Richardson, Sternlicht, Burge & Glazier, P.A., by H. Gerald Beaver, Mark A. Sternlicht, and Jessica S. Cook, for plaintiff appellee.*

*Womble Carlyle Sandridge & Rice, PLLC, by S. Fraley Bost, for ClubCorp Realty Holdings, Inc., intervening defendant appellant.*

*Van Camp, Hayes & Meacham, P.A., by James R. Van Camp and Michael J. Newman; and Brown, McCarroll & Oakes Hartline, by Jackson D. Wilson, II, for Pinewild Management, Inc., and Country Club of Pinewild Management, Inc., defendant appellants.*

SMITH, Judge.

This appeal involves the enforceability of an arbitration clause found in an agreement governed by Texas law. On 20 February 1990,

ClubCorp Realty Holdings, Inc. ("ClubCorp"), a Texas corporation, entered into a Master Joint Venture Agreement with Lieben USA Corporation ("Lieben"), a California corporation. ClubCorp was designated as the Managing General Partner of the joint venture, and Lieben was designated as a General Partner. The purpose of the joint venture was to locate, acquire, develop and manage private golf country clubs.

Section 2.5 of the joint venture agreement provided that upon location of suitable property, the joint venture would purchase such property and form a limited partnership to manage its development. In 1990, ClubCorp purchased a property known as Pinewild in Moore County, North Carolina. Upon purchasing Pinewild, the joint venture formed the Pinewild Project Limited Partnership ("PPLP") with Tohato Seika Co., Ltd., a Japanese corporation, now known as Tohato, Inc. ("Tohato"), pursuant to the PPLP Agreement. This agreement designated the Master Joint Venture as the General Partner of the PPLP and Tohato as the Limited Partner of the PPLP. Article 6 of the PPLP Agreement provided that the operations and major policy decisions of the PPLP would be controlled by ClubCorp through a Management Committee comprised of six members, with three members representing ClubCorp and three members representing Tohato. Section 6.3 of the agreement stated that each member of the committee would have one vote, and resolutions of the committee would be approved only upon a majority vote.

On 25 October 1991, the original Master Joint Venture Agreement between ClubCorp and Lieben was amended. Pursuant to this amendment, Tohato Realty USA, Inc., a subsidiary of Tohato, purchased Lieben's interest in the joint venture and was substituted in place of Lieben as General Partner. The name of the joint venture was then changed to Pinewild Realty Master Joint Venture.

In section 6.10 of the PPLP Agreement, Tohato acknowledged that ClubCorp would contract with various ClubCorp affiliates on behalf of the PPLP to perform real estate and club development services at Pinewild. ClubCorp therefore contracted with Pinewild Management, Inc. ("PMI") for overall property development and Country Club of Pinewild Management, Inc. ("CCPMI"), for development and operation of the country club. In the spring of 1996, a dispute arose between ClubCorp and Tohato regarding the operation of Pinewild. Thereafter, Tohato filed a derivative action on behalf of the PPLP against PMI and CCPMI seeking to terminate the PPLP's con-

tracts with them. Tohato filed this action pursuant to section 6.9.6 of the PPLP Agreement, which authorized Tohato to "[t]ake any action required or permitted by law to bring or pursue a derivative action in the right of the Partnership."

On 21 June 1996, PMI and CCPMI filed a motion to compel arbitration and dismiss Tohato's complaint. ClubCorp, individually and on behalf of the joint venture, moved to intervene in this case and filed a separate motion to compel arbitration and a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (1990). In these motions, the three defendants contended that the dispute between ClubCorp and Tohato had resulted in a deadlock within the PPLP's management committee and that Tohato was therefore required by the terms of the PPLP Agreement to proceed pursuant to the dispute resolution mechanism set forth in section 14.4.1 of the agreement. This section states that:

> In the event of a deadlock on the Management Committee, and the failure of the Management Committee to act renders the continued operation of the Partnership impracticable, the senior officers of the corporate partners of General Partner and Limited Partner shall meet to resolve the differences. If no resolution occurs within thirty (30) days after such meeting, General Partner and Limited Partner shall each be entitled to submit the matter to arbitration in accordance with the provisions of Article 18; provided that any such arbitration shall be nonbinding. If either Partner rejects the results of the arbitration, such Partner shall be entitled to give a notice (a "Buy/Sell Notice") to the other Partner that it desires to exercise its rights under this Section 14.4 to sell its interest in the Partnership to, or purchase the interest in the Partnership of, the other Partner.

The trial court allowed ClubCorp's motion to intervene, but denied defendants' motions to dismiss and compel arbitration. In denying these motions, the trial court found that the provisions of the PPLP Agreement did not encompass the issues disputed by the parties, that the continued operation of the PPLP had not been rendered impracticable, and that defendants failed to demonstrate the existence of grounds to compel arbitration.

[1] On appeal, defendants contend the trial court erred by failing to enforce the arbitration clause found in section 14.4.1 of the PPLP Agreement. However, the denial of defendants' motions to dismiss is not before us since defendants failed to specify their intent to appeal

that part of the trial court's order in their respective notices of appeal. *See Smith v. Independent Life Ins. Co.*, 43 N.C. App. 269, 272, 258 S.E.2d 864, 866 (1979) ("the appellant must appeal from each part of the judgment or order appealed from which appellant desires the appellate court to consider in order for the appellate court to be vested with jurisdiction to determine such matters.")

Section 19.9 of the PPLP Agreement provides that "[t]his Agreement shall be governed by and construed under the laws of the State of Texas." Texas courts have held that "[w]here the parties to a contract specify in the instrument that it is to be governed by the law of a particular state, that law will apply if it has a reasonable relationship to the contract." *Securities Investment Co. v. Finance Accept. Corp.*, 474 S.W.2d 261, 271 (Tex. Civ. App. 1971). Our Supreme Court has likewise held that "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). We therefore apply Texas law in determining the enforceability of the PPLP Agreement's arbitration clause.

We initially observe that both parties discuss the issue of PMI's and CCPMI's status as third-party beneficiaries to the PPLP Agreement. However, the trial court did not rule on this issue, and the assignments of error PMI and CCPMI cite with respect to this issue do not relate to their status as third-party beneficiaries. "The appellate court will not consider arguments based upon issues which were not presented or adjudicated by the trial tribunal. Further, the lack of an exception or assignment of error addressed to the issue attempted to be raised is a fatal defect." *State v. Smith*, 50 N.C. App. 188, 190, 272 S.E.2d 621, 623 (1980) (citations omitted); N.C.R. App. P. 10(a). Thus, we do not address the issue of PMI's and CCPMI's status as third-party beneficiaries to the PPLP Agreement.

[2] Under Texas law, a written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that either exists at the time of the agreement or arises between the parties after the date of the agreement. Tex. Civ. Prac. & Rem. Code Ann. § 171.001 (Vernon Supp. 1996). N.C. Gen. Stat. § 1-567.2 (1996) similarly provides that parties may agree in writing to submit to arbitration any controversy existing at the time of the agreement or arising thereafter. When ruling on a motion to compel arbitration, the trial court "must determine whether the parties agreed to arbitrate, and, if so, the scope of the arbitration agreement." *Southwest Health Plan, Inc.*

*v. Sparkman*, 921 S.W.2d 355, 358 (Tex. Ct. App. 1996). In the case at bar, Tohato does not dispute the existence or validity of the PPLP Agreement's arbitration clause. Thus, the issue we must determine is whether the arbitration clause encompasses the parties' dispute.

"The courts of Texas view arbitration agreements with favor and have done so since at least 1845." *American Employers' Ins. Co. v. Aiken*, 942 S.W.2d 156, 161 (Tex. Ct. App. 1997). Further,

> any doubt as to whether a particular claim falls within the scope of an arbitration clause is resolved in favor of arbitration. In other words, " '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' "

*United Parcel Service, Inc. v. McFall*, 940 S.W.2d 716, 719 (Tex. Ct. App. 1997) (citations omitted). North Carolina likewise "has a strong public policy favoring the settlement of disputes by arbitration." *Johnston County v. R. N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992).

The determination of whether an agreement imposes a duty to arbitrate a particular dispute "is a matter of contract interpretation and a question of law for the court." *American Employers' Ins. Co.*, 942 S.W.2d at 159. Here, the trial court, in its order, found as fact that the arbitration clause did not encompass the parties' dispute. However, this statement is a conclusion of law rather than a finding of fact, since such determination involves the interpretation and construction of the arbitration clause. "The legal conclusions of the trial court are always reviewable de novo by the appellate court." *General Dynamics v. Torres*, 915 S.W.2d 45, 48 (Tex. Ct. App. 1995).

Tohato claims "[t]he proper standard of review on appeal from an interlocutory order concerning a motion to stay litigation and compel arbitration is the 'no evidence' standard of review." *Carlin v. 3V Inc.*, 928 S.W.2d 291, 293 (Tex. Ct. App. 1996) (citation omitted). Under this standard,

> the court considers only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding under attack, and disregards all evidence and inferences to the contrary. If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld.

*Id.* However, we do not believe this standard should be applied in the instant case, since it "is the appropriate standard when reviewing factual questions concerning an order denying arbitration . . . ." *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 820 (Tex. Ct. App. 1996). In the instant case, we are required to interpret contract provisions and make legal conclusions; we are not required to weigh conflicting evidence and make factual determinations. Thus, we review the conclusions of the trial court *de novo*.

After reviewing the record, we conclude the trial court properly held that the PPLP Agreement's arbitration clause does not encompass the present dispute. The clause provides that a dispute will be submitted to arbitration when four conditions are met: (1) the Management Committee is deadlocked; (2) the Management Committee's failure to act renders the continued operation of the partnership impracticable; (3) the senior officers of the corporate partners have met and attempted to resolve the deadlock; and (4) the deadlock is not resolved within 30 days after the senior officers' meeting. Defendants claim Tohato conceded a deadlock exists and that the arbitration clause encompasses the present dispute by stating in its complaint that "[a] majority vote is required for bringing litigation. The Plaintiff therefore reasonably believes that requesting the Partnership to bring an action against the Defendants would be futile." Tohato argues this allegation merely sets out its belief that requesting the PPLP through the Management Committee to bring an action against PMI and CCPMI would be futile, and is not a concession that a deadlock exists among the committee members. Even assuming a deadlock exists, there is no evidence in the record that the failure of the Management Committee to act has rendered the continued operation of the partnership impracticable. The record demonstrates the partnership has continued to operate since this action was filed, and is expected to continue to operate into the foreseeable future. Thus, because the present dispute does not meet the conditions set forth in the arbitration clause, the trial court properly concluded the dispute was not required to be submitted to arbitration.

[3] Defendants further argue that Tohato conceded in its complaint that derivative actions must first be approved by the Management Committee by alleging that "a majority vote is required for bringing litigation." However, because Tohato immediately thereafter alleged "[t]he Plaintiff therefore reasonably believes that requesting the Partnership to bring an action against the Defendants would be

**TOHATO, INC. v. PINEWILD MANAGEMENT, INC.**

[128 N.C. App. 386 (1998)]

futile," we believe the allegation concerning a majority vote refers to section 6.5.14 of the PPLP Agreement, which requires Management Committee approval when the General Partner, ClubCorp, desires to commence litigation. Section 6.9.6 of the PPLP Agreement clearly states that Tohato, as Limited Partner, may "[t]ake any action required or permitted by law to bring or pursue a derivative action in the right of the Partnership," and does not mention the necessity of Management Committee approval for bringing such an action. "It is a well established rule of construction that the specific language of an instrument controls over its general terms." *O'Connor v. O'Connor*, 694 S.W.2d 152, 155 (Tex. Ct. App. 1985). Thus, the specific authorization of derivative suits found in section 6.9.6 of the PPLP Agreement controls the general requirement of Management Committee approval for litigation brought by ClubCorp in section 6.5.14 and permits Tohato to institute the present action without approval by the Management Committee.

**[4]** Finally, defendants argue that the trial court improperly placed the burden of proof on them by stating in its order that they "failed to demonstrate that grounds exist to compel arbitration." Defendants claim the party opposing the enforcement of an arbitration clause has the burden of establishing that its claim is not referable to arbitration. However, " '[w]hen a party seeks to compel arbitration, he must first establish his right to that remedy under the contract.' " *Weekley Homes, Inc. v. Jennings*, 936 S.W.2d 16, 18 (Tex. Ct. App. 1996) (citation omitted). Since defendants have not shown that the arbitration clause encompasses the present dispute, the trial court properly concluded that defendants failed to demonstrate the existence of grounds to compel arbitration.

For the above reasons, we conclude the trial court properly denied defendants' motion to compel arbitration.

Affirmed.

Judges MARTIN, John C., and JOHN concur.