IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1035

Filed 4 February 2026

Union County, No. 23CVS003371-890

ADVISOR LAW, LLC, Plaintiff,

v.

MICHAEL C. HOLLAND, Defendant.

Appeal by Defendant from orders entered 24 July 2024 by Judge Matthew B. Smith in Union County Superior Court. Heard in the Court of Appeals 14 August 2025.

> *Hamilton Stephens Steele + Martin, PLLC, by M. Aaron Lay, Robert J. Shelton, and Zachary M. Perhach, for Plaintiff-Appellee.*

> *Cranfill Sumner, LLP, by Steven A. Bader, for Defendant-Appellant.*

CARPENTER, Judge.

Michael C. Holland ("Defendant") appeals from the trial court's 24 July 2024 order (the "Arbitration Order") denying Defendant's motion to compel arbitration and 24 July 2024 order (the "Summary Judgment Order") granting the motion for summary judgment filed by AdvisorLaw, LLC ("Plaintiff"). On appeal, Defendant argues the trial court erred by: (1) denying Defendant's motion to compel arbitration; and (2) granting Plaintiff's motion for summary judgment. After careful review, we affirm.

## I. Factual & Procedural Background

Under federal securities regulations, when an investment advisor registered with the Securities and Exchange Commission ("SEC") is terminated, the employing firm reports the termination through regulatory filings that appear in two publicly accessible databases: SEC's Investment Advisor Public Disclosure ("IAPD") and Financial Industry Regulatory Authority's BrokerCheck ("BrokerCheck"). In certain circumstances, investment advisors may seek to expunge their termination disclosures from IAPD and BrokerCheck.

Defendant is an investment advisor, registered with the SEC, who worked for Fifth Third Securities ("Fifth Third"). On 8 February 2019, Fifth Third terminated Defendant and reported the termination in regulatory filings, which were recorded in IAPD and BrokerCheck. Seeking to remove the termination disclosures, Defendant contacted Plaintiff, which provides termination disclosure expungement services.

On 4 September 2020, Defendant and Plaintiff entered into a contract (the "Contract") for the expungement of Fifth Third's notice of Defendant's termination from IAPD and BrokerCheck. The Contract required a $15,000 retainer and provided for billing at hourly rates ranging from $75 to $650, depending on the services. The Contract included an arbitration clause, providing:

> Any contractual disputes that include specific performance as the primary or non-primary claim arising from this agreement shall have the entire dispute settled finally and exclusively by arbitration in Denver, Colorado pursuant to the Colorado Uniform Arbitration Act and in accordance with Colorado Law.

Between September and November 2020, Defendant made three payments totaling $15,000 for the retainer fee. On 16 June 2021, Plaintiff issued an initial invoice to Defendant for $15,461.75. Pursuant to the Contract, Plaintiff applied the $15,000 retainer to the initial invoice, leaving a balance of $461.75. Thereafter, Plaintiff continued to send Defendant invoices for services rendered until 26 July 2022, at which time Plaintiff sent Defendant a demand letter seeking the total unpaid balance of $44,847.33.

In October 2022, Defendant requested arbitration through the Colorado Bar Association's Legal Fee Arbitration Committee ("COBAR"), but Plaintiff declined. On 8 March 2023, Plaintiff initiated arbitration through the Fairclaims forum, but Defendant declined. On 20 March 2023, Plaintiff again attempted to initiate arbitration, this time through COBAR. This arbitration did not occur because, according to Defendant, COBAR never contacted him following Plaintiff's request for arbitration.

On 15 December 2023, Plaintiff filed a breach of contract action against Defendant in Union County Superior Court, requesting: (1) damages plus interest; (2) reasonable attorney's fees; (3) action costs to be taxed against Defendant; (4) a jury trial on all issues; and (5) any other relief the court deemed proper. Plaintiff served Defendant with the complaint and summons at his home address. Defendant filed a *pro se* answer, denying liability and asserting several defenses. On 8 March 2024, Plaintiff served Defendant with discovery requests, including interrogatories,

requests for production of documents, and requests for admissions. Despite being served at his home address, Defendant did not respond to Plaintiff's discovery requests and claimed he never received them.

On 23 May 2024, Defendant moved to compel arbitration. On 28 May 2024, Plaintiff moved for summary judgment. On 22 July 2024, the trial court conducted a hearing on both motions. Two days later, the trial court entered the Arbitration Order denying Defendant's motion to compel arbitration. In the Arbitration Order, the trial court found that the Contract only required arbitration "for actions seeking specific performance" and concluded that the arbitration clause was "not applicable to the claim sought by [Plaintiff] in this matter." That same day, the trial court granted summary judgment for Plaintiff. On 22 August 2024, Defendant filed written notice of appeal.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III. Issues

The issues are whether the trial court erred by: (1) denying Defendant's motion to compel arbitration; and (2) granting Plaintiff's motion for summary judgment.

## IV. Analysis

### A. Arbitration

First, Defendant argues the trial court erred by denying his motion to compel arbitration because, pursuant to the arbitration clause, Plaintiff's action was subject

to arbitration. Defendant further asserts that because the arbitration clause applied, Colorado law governs the interpretation of the Contract.

"[W]e apply the *de novo* standard to the denial of a motion to compel arbitration and its underlying conclusions of law concerning issues of contract interpretation and whether the dispute is subject to arbitration." *Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 355, 826 S.E.2d 567, 571 (2019) (citing *Creed v. Smith*, 222 N.C. App. 330, 333, 732 S.E.2d 162, 164 (2012)). Under a de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

As an initial matter, we address Defendant's contention that Colorado law governs the interpretation of the Contract. Generally, the law of the state where a contract is made governs the contract, but parties may agree otherwise. *See Tanglewood Land Co., Inc. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980); *see also Federated Fin. Corp. of Am. v. Jenkins*, 215 N.C. App. 330, 333, 719 S.E.2d 48, 51 (2011) ("[W]here parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect.") (cleaned up). "Although the language used may differ from one contract to another, one or more of three types of provisions (choice of law, consent to jurisdiction, and forum selection), which have very distinct purposes" may

exist in a contract. *Wall v. Automoney, Inc.*, 284 N.C. App. 514, 524, 877 S.E.2d 37, 48 (2022) (internal quotation marks and citation omitted). A choice of law provision "names a particular state and provides that the substantive laws of that jurisdiction will be used to determine the validity and construction of the contract . . . ." *Id.* at 524, 877 S.E.2d at 48 (internal quotation marks and citation omitted). On the other hand, a "forum selection [clause] designates a particular state or court as the jurisdiction in which the parties will litigate disputes arising out of the contract and their contractual relationship." *Johnston Cnty. v. R.N. Rouse & Co., Inc.*, 331 N.C. 88, 93, 414 S.E.2d 30, 33 (1992).

Here, Defendant accepted Plaintiff's offer and executed the Contract in North Carolina, meaning North Carolina law governs our interpretation unless otherwise provided by the Contract. *See Tanglewood Land Co., Inc.*, 299 N.C. at 262, 261 S.E.2d at 656. The Contract does not include an exclusive forum selection clause nor an exclusive choice of law clause. The Contract does, however, include a contingent choice of law provision that Colorado law will govern *if* the dispute is subject to arbitration—specifically, if the dispute "include[s] specific performance." As discussed below, this dispute is not subject to arbitration because Defendant's simple breach of contract claim does not fall within the scope of the arbitration clause. Therefore, the forum selection and choice of law provisions contained in the narrow arbitration clause do not apply, and North Carolina law, not Colorado law, dictates our interpretation of the Contract.

Defendant asserts that the arbitration clause should be read broadly to cover any claims arising under the Contract, including those for specific performance. Defendant additionally asserts that, even if the arbitration clause is not read broadly, it is ambiguous and must be construed against the drafter, Plaintiff. On the other hand, Plaintiff contends that the Contract is unambiguous and provides that a dispute arising under the Contract is not subject to arbitration unless a party seeks specific performance as a remedy. We agree with Plaintiff.

"Contract interpretation is a question of law . . . ." *GE Betz, Inc. v. Conrad*, 231 N.C. App. 214, 225, 752 S.E.2d 634, 644 (2013). "North Carolina law requires a court to interpret a contract by examining its language for indications of the parties' intent at the moment of execution." *Fairview Devs., Inc. v. Miller*, 187 N.C. App. 168, 171, 652 S.E.2d 365, 367 (2007). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996). "This intention is to be gathered from the entire instrument, viewing it from its four corners." *Jones v. Palace Realty Co.*, 226 N.C. 303, 305, 37 S.E.2d 906, 907 (1946). "When interpreting a contract, the Court should presume that the words of the agreement were deliberately selected and be given their plain meaning." *Value Health Sols., Inc. v. Pharm. Rsch. Assocs.*, 385 N.C. 250, 267, 891 S.E.2d 100, 114 (2023).

Our courts adhere to the central principle of contract interpretation that the various terms of a contract are to be harmoniously construed, and if possible, every

word and every provision is to be given effect. *WakeMed v. Surgical Care Affiliates, LLC*, 243 N.C. App. 820, 824, 778 S.E.2d 308, 312 (2015); *see Emmanuel Afr. Methodist Episcopal Church v. Reynolds Constr. Co.*, 217 N.C. App. 176, 179–80, 718 S.E.2d 201, 203–04 (2011) (" 'This Court has long acknowledged that an interpretation which gives a reasonable meaning to all provisions of a contract will be preferred to one which leaves a portion of the writing useless or superfluous.' ") (quoting *International Paper Co. v. Corporex Constructors, Inc.,* 96 N.C. App. 312, 316, 385 S.E.2d 553, 555–56 (1989)). If "only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract . . . ." *Woods v. Nationwide Mutual Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978).

Again, the arbitration clause provides:

> Any contractual disputes that include specific performance as the primary or non-primary claim arising from this agreement shall have the entire dispute settled finally and exclusively by arbitration in Denver, Colorado pursuant to the Colorado Uniform Arbitration Act and in accordance with Colorado Law.

In our view, the scope of the arbitration clause is clear and unambiguous. The opening phrase, "any contractual disputes that include specific performance," acts as a qualifier, narrowing the scope of the arbitration clause to only those disputes where a party requests specific performance as a remedy. The next phrase, "primary or non-primary," functions as a modifier, clarifying that arbitration is required where

specific performance is implicated by a "claim" in the dispute. The arbitration clause additionally requires that disputes involving specific performance be arbitrated in "Denver, Colorado pursuant to the Colorado Uniform Arbitration Act and in accordance with Colorado Law."

Reviewing the four corners of the Contract, the plain language of the arbitration clause narrows its binding effect to contractual disputes where specific performance is among the remedies sought. *See Jones*, 226 N.C. at 305, 37 S.E.2d at 907. The language is clear and only one reasonable interpretation exists, so we enforce the contract as written. *See Woods*, 295 N.C. at 506, 246 S.E.2d at 777. The interpretation urged by our dissenting colleague fails to give effect to the qualifying language of the arbitration clause, impermissibly broadening its scope. We read the terms of the arbitration clause harmoniously, rather than rendering the specific-performance language superfluous. *See WakeMed*, 243 N.C. App. at 824, 778 S.E.2d at 312; *Emmanuel Afr. Methodist Episcopal Church*, 217 N.C. App. at 179–80, 718 S.E.2d at 203–04. Because specific performance was not requested as a remedy, the arbitration clause does not apply.[1] Therefore, the trial court did not err by denying Defendant's motion to compel arbitration, and we affirm the Arbitration Order.

---

[1] The fact that specific performance is a disfavored remedy in personal service contract disputes does not undermine our interpretation of the arbitration clause. *See Williams v. Habul*, 219 N.C. App. 281, 289–91, 724 S.E.2d 104, 110–11 (2012) (citing approvingly, in *dicta*, the policy of the Restatement (Second) of Contracts § 367(1) (1981) against specific enforcement of personal service contracts while recognizing that the Restatement can serve as "persuasive, not binding authority" because " '[e]xcept as specifically adopted in this jurisdiction, the Restatement should not be viewed as determinative of North Carolina law.' " (quoting *Hedrick v. Rains,* 344 N.C. 729, 729, 477 S.E.2d 171, 172 (1996)).

**B. Summary Judgment**

Defendant next contends that because the dispute is subject to arbitration, this Court should vacate the Summary Judgment Order. We disagree.

"We review de novo an appeal of a summary judgment order." *Cullen v. Logan Developers, Inc.*, 386 N.C. 373, 377, 904 S.E.2d 730, 734 (2024) (internal quotation marks and citation omitted). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Id.* at 377, 904 S.E.2d at 734 (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) (2023)). "The summary judgment standard requires the trial court to construe evidence in the light most favorable to the nonmoving party . . . ." *Id.* at 377, 904 S.E.2d at 734 (internal quotation marks and citation omitted).

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 536, 551 S.E.2d 546, 554 (2001) (internal quotation marks and citation omitted). "A party may serve upon any other party a written request for the admission . . . of the truth of any matters . . . that relate to statements or opinions of fact or of the application of law to fact . . . ." N.C. Gen. Stat. § 1A-1, Rule 36(a) (2023). Service upon a party is proper by "mailing a copy to the party at the party's last known address . . . ." N.C. Gen. Stat. § 1A-1, Rule 5(b)(2)(b) (2023).

Further, if a *pro se* defendant "provides a mailing address in a document filed in response to a complaint and serves a copy of that filing on opposing counsel," then opposing counsel is permitted to "rely on that address for service of all subsequent process and other communications until a new address is furnished." *J.M. Parker & Sons, Inc. v. William Barber, Inc.*, 208 N.C. App. 682, 686, 704 S.E.2d 64, 67 (2010) (internal quotation marks and citation omitted).

If a party served does not respond within thirty days, "the matter is admitted." N.C. Gen. Stat. § 1A-1, Rule 36(a). Admissions are "conclusively established unless the court on motion permits withdrawal or amendment." *Id.*, Rule 36(b). "Facts that are admitted under Rule 36(b) are sufficient to support a grant of summary judgment." *Kniep v. Templeton*, 185 N.C. App. 622, 629, 649 S.E.2d 425, 430 (1999) (internal quotation marks and citation omitted).

Defendant contends the trial court's consideration of Plaintiff's motion for summary judgment was procedurally improper. As outlined above, the trial court correctly concluded that the arbitration clause did not control this contractual dispute. Thus, it was procedurally proper for the trial court to reach and issue a ruling on Plaintiff's motion for summary judgment. Defendant makes no additional assertions in support of his argument that the trial court erred by granting summary judgment.

Here, Plaintiff mailed the requests for admission to Defendant's home address—the same address Defendant used throughout the action. Indeed,

- 11 -

Defendant included his home address in his answer, his motion to compel arbitration, and in his correspondence with COBAR. Thus, Defendant was properly served. *See* N.C. Gen. Stat. § 1A-1, Rule 5(b)(2)(b). Plaintiff's request for admissions asked Defendant to admit that: (1) the parties entered into a valid agreement; (2) Defendant breached the Contract by failing to pay the $44,847.33 service fee; and (3) Plaintiff sustained damages as a result. By failing to respond to Plaintiff's requests for admission, Defendant admitted the elements of breach of contract. *See* N.C. Gen. Stat. § 1A-1, Rule 36(a); *Kniep*, 185 N.C. App. at 629, 649 S.E.2d at 430. Accordingly, the trial court did not err by granting Plaintiff's motion for summary judgment because the elements of breach of contract were admitted, leaving no genuine issue of material fact. *See Kniep*, 185 N.C. App. at 629, 649 S.E.2d at 430. Accordingly, we affirm the Summary Judgment Order.

## V. Conclusion

The trial court did not err by denying Defendant's motion to compel arbitration or by granting Plaintiff's motion for summary judgment. Accordingly, we affirm.

AFFIRMED.

Chief Judge DILLON concurs.

Judge TYSON dissents by separate opinion.

TYSON, Judge, dissenting.

The majority's opinion improperly affirms the trial court's denial of Defendant's motion to compel arbitration and order granting Plaintiff's motion for summary judgment. Both orders are properly reversed. I respectfully dissent.

## I. Arbitration Agreement

### A. Standard of Review

We review *de novo* the agreement and whether the specific dispute is governed by the arbitration agreement. *Tohato, Inc. v. Pinewild Mgmt., Inc.*, 128 N.C. App. 386, 391, 496 S.E.2d 800, 804 (1998). When reviewing an arbitration agreement, this Court examines "(1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement." *Slaughter v. Swicegood*, 162 N.C. App. 457, 461, 591 S.E.2d 577, 580 (2004) (citations and internal quotation marks omitted).

"One of the most fundamental principles of contract interpretation is that ambiguities are to be construed against the party who prepared the writing." *Chavis v. S. Life Ins. Co.*, 318 N.C. 259, 262, 347 S.E.2d 425, 427 (1986) (citations omitted).

### B. Contract Interpretation

The canons of contract interpretation are well established and clear. "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996). "This intention is to be gathered from the entire instrument, viewing it

from its four corners." *Jones v. Palace Realty Co.*, 226 N.C. 303, 305, 37 S.E.2d 906, 907 (1946). "When interpreting a contract, the Court should presume that the words of the agreement were deliberately selected and be given their plain meaning." *Value Health Sols., Inc. v. Pharm. Rsch. Assocs.*, 385 N.C. 250, 267, 891 S.E.2d 100, 114 (2023).

"The heart of a contract is the intention of the parties, which is ascertained by the subject matter of the contract, the language used, the purpose sought, and the situation of the parties at the time." *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 11, 161 S.E.2d 453, 462 (1968) (citations omitted). "It is a general rule of contract law that the intent of the parties, where not clear from the contract, may be inferred from their actions." *Branch Banking & Trust Co. v. Kenyon Inv. Corp.*, 76 N.C. App. 1, 9, 332 S.E.2d 186, 192 (1985), *appeal withdrawn*, 316 N.C. 192, 341 S.E.2d 587 (1986).

If "only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract . . . ." *Woods v. Nationwide Mutual Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978).

### C. Analysis

The contract, drafted by Plaintiff, provides:

> Any contractual disputes that include specific performance as the primary or non-primary claim arising from this agreement shall have the entire dispute settled finally and exclusively by arbitration in Denver, Colorado pursuant to the Colorado Uniform Arbitration Act and in accordance

with Colorado Law. (emphasis supplied).

Defendant correctly contends the arbitration clause should be read broadly to cover "Any contractual disputes", including but not exclusively those for specific performance, whether "the primary or non-primary claim", which "aris[e] from this agreement." Strong Federal and State public policy exists in favor of resolving disputes through arbitration where the parties have mutually agreed to use that alternative dispute remedy, and such provisions are to be constructed broadly in favor of arbitration. *See Goldstein v. Am. Steel Span, Inc.*, 181 N.C. App. 534, 536, 640 S.E.2d 740, 742 (2007).

The Federal Arbitration Act provides:

> A written provision in any . . . *contract evidencing a transaction involving commerce to settle by arbitration* a controversy thereafter arising out of such contract or transaction . . . *shall be valid, irrevocable, and enforceable,* save upon such grounds as exist at law or in equity for the *revocation* of any contract.

9 U.S.C. § 2 (2024) (emphasis supplied).

The Supreme Court of the United States "described this provision as reflecting both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 179 L.Ed.2d 742, 751 (2011) (internal citations omitted). Justice Scalia, writing for the majority of the Court, held "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.*

(internal citations omitted).

The trial court prejudicially erred as a matter of law by concluding the arbitration clause "that include specific performance as the primary or non-primary claim arising from this agreement" limits "[a]ny contractual dispute" . . . "arising from this agreement", solely to claims only where specific performance and regardless of whether that remedy is sought "as the primary or non-primary claim." *Id.*

## II.    Conclusion

A long line of Federal and North Carolina precedents embrace a strong public policy to resolve disputes by arbitration where the partes have mutually agreed to do so. *Id.* North Carolina law also construes any ambiguity in contractual provisions against the drafter of the provision, here the Plaintiff. *Chavis*, 318 N.C. at 262, 347 S.E.2d at 427.

The provision clearly and unambiguously provides for arbitration as the alternative dispute resolution mechanism to resolve contractual disputes and for arbitration to take place in Denver Colorado and for the dispute to be decided according to Colorado Law. The trial court prejudicially erred by denying Defendant's motion to compel arbitration and by entering summary judgment on behalf of Plaintiff. I respectfully dissent.