# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00680-CV

**Appellant, Paul DeNucci, Individually, and in his
Derivative Capacity on behalf of eStrategy Solutions, Inc.//
Cross-Appellants, John Matthews, Steve Matt and eStrategy Solutions, Inc.**

**v.**

**Appellees, John Matthews, Steve Matt and eStrategy Solutions, Inc.//
Cross-Appellee, Paul DeNucci, Individually, and in his
Derivative Capacity on behalf of eStrategy Solutions, Inc.**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. D-1-GN-10-002065, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

Paul DeNucci, a minority shareholder in a closely held corporation, eStrategy Solutions, Inc. (ESS), alleged that John Matthews, the majority shareholder, president, and treasurer of the corporation, breached his fiduciary duties and committed fraud by, among other things, funding distributions by incurring unauthorized loans and failing to pay vendors. At trial, Matthews essentially admitted to this conduct but asserted that DeNucci had impliedly ratified the distributions by retaining his portion of the distribution. The trial court dismissed DeNucci's fraud claims on a no-evidence motion for summary judgment. The remaining derivative breach of fiduciary duty claims proceeded to trial, including claims against Matthews and counter-claims against DeNucci. The trial court rendered judgment based on a jury verdict in favor of DeNucci, finding that Matthews had breached his fiduciary duties to the corporation, and awarded damages. All parties have appealed.

We affirm the trial court's judgment, except as to the interest charges awarded to ESS as damages for Matthews's breach of fiduciary duty. Concluding there is some evidence of damages but insufficient evidence to support the full amount awarded, we reverse this portion of the judgment and remand for further proceedings consistent with this opinion.[1]

## BACKGROUND

This suit arises from a dispute among the three shareholders of ESS, a closely held corporation that provides online training and testing for persons who need to obtain or maintain a licensure by Texas governmental entities. The three shareholders are: (1) John Matthews, 51% majority shareholder; (2) Paul DeNucci, 40% minority shareholder; and (3) Steve Matt, 9% minority shareholder. Matthews is also the president, treasurer, founder, and CEO of ESS. Matt is also an employee and on the board of directors. DeNucci is the only non-employed, non-salaried shareholder.

In 2000, Matthews founded and incorporated ESS. In 2006, DeNucci purchased his shares for $72,000 and became a member of the board of directors. In addition to purchasing stock, DeNucci loaned $179,000 to ESS. In conjunction with the stock purchase and loan agreements, the shareholders agreed that the salaries for Matt and Matthews would not increase without DeNucci's consent. Shortly thereafter, the three shareholders began receiving distributions from ESS. DeNucci

---

[1] On January 25, 2013, we abated this appeal upon the appellees' request because the parties had potentially reached a mediated settlement of the underlying suit in this appeal. On September 8, 2014, the parties filed a joint status report informing the Court that settlement efforts had failed and requesting the case be set for oral argument.

testified that he consented to the distributions based on Matthews's representations regarding the profitability of ESS.

In April of 2007, the shareholders agreed that ESS would temporarily suspend loan payments to DeNucci in order to stockpile cash needed for business development. Matthews testified at trial that, although ESS had stopped paying back its loan to DeNucci, the corporation never used the missed loan payments to increase its cash reserves.

In February 2008, DeNucci loaned ESS an additional $20,000. Matthews testified that, as a condition of the loan, he agreed that ESS would not incur any additional debt from other lenders. In May 2008, however, Matthews increased ESS's line of credit at Frost Bank by $20,000. In August 2008, Matthews borrowed an additional $25,000 under a factoring agreement. Matthews testified that he did not, at the time ESS entered these agreements, disclose the additional debts to the other shareholders. He further testified that he borrowed the money to fund distributions, pay current expenses, and prepare for a new client that never came to fruition. While the company was borrowing money, all three shareholders continued to receive distributions.

Matthews testified that he was the only person at ESS who made determinations regarding the amount and frequency of distributions. He further testified that—during the time ESS was making distributions—he was the treasurer of the corporation but failed to keep books or records of the company's financial transactions. To determine whether to make a distribution, Matthews testified that he looked at the corporation's checking account and made a "very cursory" calculation of outstanding liabilities to determine how much money was available to distribute. He admitted, however, that he did not always consider ESS's outstanding liabilities when making distributions and made distributions knowing that ESS would be unable to pay its vendors.

3

After learning that ESS was not paying its vendors, Matt and DeNucci called an emergency shareholders' meeting in October 2008 to discuss ESS's financials. Matthews admitted at trial that ESS was insolvent by this time, which was defined as unable to pay its obligations as they became due. There are no board minutes from the meeting, and the shareholders heavily dispute what was discussed. All parties agree that the shareholders agreed to stop distributions until ESS was solvent. It is also undisputed that, during this meeting, the shareholders—including DeNucci—agreed to salary increases for Matthews and Matt. The parties disputed at trial, however, the extent to which Matthews disclosed ESS's financial woes, including the additional debts Matthews had incurred and that the corporation had been using borrowed money to fund distributions.

After the shareholders' meeting, ESS retained—at DeNucci's request—an auditor to review its financial records. According to the auditor's report, ESS's distributions to shareholders in 2008 exceeded its net profits. The report found that ESS's net profits for 2008 were less than $156,000, but that the company had distributed to shareholders more than $228,000. The report further concluded that Matthews had been able to fund the distributions only by incurring loans, failing to pay vendors, and not paying payroll liabilities owed to the IRS.

After the auditor issued her report, the relationships between the parties quickly deteriorated. Matthews and Matt eventually voted DeNucci off of the board of directors and limited his access to the company's financial records. ESS also refused to resume regular payments on DeNucci's loans to the corporation. DeNucci, in turn, filed suit against Matthews, Matt, and ESS (collectively appellees) seeking to enforce the promissory notes and later added claims for minority shareholder oppression and derivative claims on behalf of ESS, including claims for fraud and

breach of fiduciary duty. The appellees, in turn, filed a counterclaim against DeNucci for breach of fiduciary duty. DeNucci obtained a favorable judgment on the promissory notes, and ESS has now repaid those notes with interest.

With regard to the remaining claims, Matthews and Matt obtained a no-evidence partial summary judgment dismissing the majority of DeNucci's claims, including his claims of fraud and shareholder oppression. DeNucci then nonsuited his remaining claims against Matt prior to trial. Thus, the only claims submitted to the jury were DeNucci's derivative claim for breach of fiduciary duty against Matthews and the appellees' corresponding derivative counterclaim against DeNucci for breach of fiduciary duty, as well as a claim for declaratory relief seeking construction of a buy-out provision in the parties' stock purchase agreement. The jury found in favor of DeNucci, finding that only Matthews had breached his fiduciary duties to ESS. The jury also found in favor of DeNucci in construing the stock purchase agreement.

The jury additionally found that Matthews's breach of fiduciary duty proximately caused ESS to incur the following damages: (1) $0 for excess salaries; (2) $37,230 in excess distributions; (3) $39,783 in interest on the factoring agreement and other interest charges; (4) $92,000 in attorney's fees; and (5) $13,600 in excess interest on the loan from DeNucci. The trial court rendered judgment consistent with the jury's findings, except it eliminated the $92,000 awarded to ESS against Matthews for attorney's fees proximately caused by his breach of fiduciary duty. The evidence at trial showed that ESS had paid $92,000 in attorney's fees incurred by Matthews and Matt in this litigation.

5

The trial court additionally granted equitable relief to, in part, reinstate DeNucci to the board of directors and to require ESS to retain a bookkeeper and provide DeNucci with access to financial records. The trial court also awarded DeNucci $75,000 in attorney's fees against ESS for preparation of the case and trial, *see* Tex. Bus. Orgs. Code § 21.561(b)(1) (court may order corporation to pay attorney's fees plaintiff incurred in shareholder derivative proceeding if the court finds the proceeding resulted in substantial benefit to the corporation), and $10,000 in attorney's fees for the declaratory judgment action. *See* Tex. Civ. Prac. & Rem. Code § 37.009.

All parties have appealed. DeNucci raises two issues on appeal: (1) whether the trial court erred in dismissing his fraud claims on no-evidence summary judgment; and (2) whether the trial court erred by not awarding to ESS the $92,000 in attorney's fees designated by the jury as damages proximately caused by Matthews's breach of fiduciary duty. We conclude any error in the trial court's summary judgment was rendered harmless by the jury's findings at trial. We further conclude that DeNucci has not shown the trial court abused its discretion by disregarding the jury's findings on attorney's fees.

On cross-appeal, the appellees raise five issues: (1) whether the trial court abused its discretion in permitting DeNucci to introduce undisclosed damages evidence; (2) whether DeNucci's retention of his distribution proceeds constituted ratification of the distribution as a matter of law; (3) or alternatively, whether there was insufficient evidence to support the jury's finding that DeNucci had not breached his fiduciary duties by retaining the distributions; (4) whether the award of damages for interest was excessive; and (5) whether the trial court erred by finding that the buy-out provision of the stock purchase agreement was ambiguous. We overrule the appellees' issues

6

on appeal, with the exception of their challenge to the factual sufficiency of the evidence supporting the award of interest charges.

**Summary Judgment on DeNucci's Fraud Claims**

In his first issue on appeal, DeNucci challenges the trial court's partial summary judgment on his fraud claims.[2] A partial summary judgment is reviewable on appeal, where as here, it has been merged into a final judgment disposing of the whole case. *See Pan Am. Petroleum Corp. v. Texas Pac. Coal & Oil Co.*, 324 S.W.2d 200, 201 (Tex. 1959). "[T]he propriety of granting a partial summary judgment must be determined from the posture of the pleadings and evidence at the time the court granted the motion." *State Farm Fire & Cas. Co. v. Griffin*, 888 S.W.2d 150, 153 (Tex. App.—Houston [1st Dist.] 1994, no writ).

A trial court's erroneous decision to grant summary judgment, however, can be rendered harmless by subsequent events in the trial court. *See Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005) (holding that any error in granting partial summary judgment was rendered harmless when subsequent jury finding negated recovery on dismissed claim); *see also* Tex. R. App. P. 44.1(a). The harmless error rule states that before reversing a judgment because of an error of law, the reviewing court must find that the error amounted to such a denial of the appellant's rights that the error "probably caused the rendition of an improper

---

[2] On appeal, DeNucci initially also sought review of the trial court's dismissal on summary judgment of his shareholder oppression claims. In light of *Ritchie v. Rupe*, 443 S.W.3d 856, 877–91 (Tex. 2014) (declining to recognize a common law cause of action for minority shareholder oppression in closely held corporation), DeNucci conceded this issue at oral argument and withdrew the issue from review.

judgment," or that the error "probably prevented the appellant from properly presenting the case to the court of appeals." *See* Tex. R. App. P. 44.1(a); *see also G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297–98 (Tex. 2011). "The rule applies to all errors." *See G & H Towing Co.*, 347 S.W.3d at 297. Thus, to merit reversal, DeNucci must show that the trial court's grant of the motion for partial summary judgment on his fraud claims was harmful. *See* Tex. R. App. P. 44.1(a); *see also Progressive Cnty. Mut. Ins.*, 177 S.W.3d at 921.

On appeal, DeNucci contends that he was harmed by the trial court's partial summary judgment of his fraud claims because he was not able to recover damages at trial related to Matthews and Matt's salary increases. In his live pleadings at the time of summary judgment, however, DeNucci asserted the same factual basis for both his claims of fraud and breach of fiduciary duty, and the jury failed to find that the salary increases were damages proximately caused by Matthews's conduct. DeNucci pleaded that Matthews had both breached his fiduciary duties and committed fraud by distributing non-existent profits and by misrepresenting the profitability of ESS to induce DeNucci to consent to salary increases for Matthews and Matt. DeNucci additionally sought the same damages, return of the prohibited distributions and return of the salary increases, for both claims. The trial court granted summary judgment as to the fraud claim but permitted DeNucci to proceed at trial with his breach of fiduciary duty claim.

Because the breach of fiduciary duty and fraud claims were based on the same facts and sought the same damages, the parties fully litigated at trial the distribution and salary increase issues, and the trial court admitted all evidence relevant to these claims. With regard to the distributions, DeNucci presented evidence that Matthews had made distributions by borrowing

8

undisclosed debts and failing to pay vendors. Matthews essentially admitted to this conduct at trial, and DeNucci recovered damages for this claim.

With regard to the salary increases, however, there were many disputed fact issues at trial. DeNucci testified that Matthews had induced him to consent to the salary increases by misrepresenting the profitability of ESS and failing to disclose the additional debts Matthews had incurred. Matthews, on the other hand, testified that he had clarified many of the alleged misrepresentations prior to DeNucci's consent to the salary increases. The appellees additionally pleaded and presented evidence that DeNucci had ratified the salary increases after all material facts were disclosed to him. The evidence included an email from DeNucci, written after he received the auditor's report, stating: "I do not care whether or not you have taken your raise—I ok'd it." The jury was instructed that any breach of fiduciary duty by Matthews was excused if DeNucci ratified the conduct after all material facts were fully disclosed to him. The jury then found that the salary increases were not damages proximately caused by Matthews's breach of fiduciary duty.

Assuming without deciding that the trial court erred by dismissing the fraud claims, we conclude any error was harmless because the issue of whether the salary increases were damages proximately caused by Matthews's conduct was fully litigated at trial independently of the grant of the motion for partial summary judgment. *See Progressive Cnty. Mut. Ins.*, 177 S.W.3d at 921 (error is harmless when subsequent jury finding negates an essential element of claim dismissed on summary judgment). As noted above, the jury found that the salary increases were not damages proximately caused by Matthews's breach of fiduciary duty. This finding has not been challenged

9

on appeal and may be considered in determining harm from the trial court's grant of partial summary judgment. *See id.*

On appeal, DeNucci attempts to re-litigate this claim by characterizing it as a fraud claim. Both claims, however, were predicated on identical theories of liability, and an officer's fraudulent conduct that harms the corporation is necessarily also a breach of the officer's fiduciary duties. *See Fidelity Nat'l Title Ins. Co. v. Heart of Tex. Title Co.*, No. 03-98-00473-CV, 2000 WL 13037, at *3 (Tex. App.—Austin Jan. 6, 2000, pet. denied) (not designated for publication) ("[A] breach of fiduciary duty that causes injury to another is always fraudulent; whether that fraud is actual or constructive is determined by the actor's mental state or moral culpability."); *see also Smith v. Moody Gardens, Inc.*, 336 S.W.3d 816, 821 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (where jury found on statutory claim that skater's fall was not proximately caused by deep groove in ice, any error in trial court's summary judgment of negligence and premises liability claims that were predicated on same facts and theory of recovery was harmless error). Accordingly, we cannot conclude that DeNucci has shown that the trial court's partial summary judgment on his fraud claims was harmful error.

**Attorney's Fees**

In his last issue on appeal, DeNucci challenges the trial court's refusal to award ESS attorney's fees designated by the jury as damages proximately caused by Matthews's breach of fiduciary duty. The trial court had asked the jury what amount of attorney's fees, if any, were proximately caused by Matthews's failure to comply with his fiduciary duty to ESS. The jury responded: "$92,000.00." There was evidence at trial that this was the total amount of legal fees

10

paid by ESS during this litigation for both Matthews and Matt's litigation costs. The trial court initially rendered a final judgment consistent with the jury's findings awarding ESS $92,000 in attorney's fees for the breach of fiduciary duty claim. The appellees moved to modify the judgment, in part, on the grounds that—under the American Rule—attorney's fees "paid to prosecute or defend a lawsuit cannot be recovered in that suit absent a statute or contract that allows for their recovery." *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Dev. & Research Corp*., 299 S.W.3d 106, 120 (Tex. 2009). The trial court granted the motion and entered a modified judgment deleting the award. The availability of attorney's fees is a question of law we review de novo. *See Holland v. Wal-Mart Stores, Inc*., 1 S.W.3d 91, 94–95 (Tex. 1999).

A prevailing party on a breach of fiduciary duty claim generally may not recover attorney's fees against an adversary to the claim. *See Turner v. Turner*, 385 S.W.2d 230, 233 (Tex. 1964) ("The general rule of law in this state is that, unless provided for by statute or by contract between the parties, attorney's fees incurred by a party to litigation are not recoverable against his adversary . . . in an action in tort."); *Potter v. GMP, L.L.C.*, 141 S.W.3d 698, 705 (Tex. App.—San Antonio 2004, pet. dism'd) (attorney's fees are generally not recoverable for breach of fiduciary duty claims). Here, however, DeNucci—pursuant to a statutory provision—was able to recover from ESS the $75,000 in attorney's fees he incurred prosecuting the breach of fiduciary duty claim derivatively on behalf of ESS. *See* Tex. Bus. Orgs. Code § 21.561(b)(1) (court may order corporation to pay attorney's fees plaintiff incurred in shareholder derivative proceeding if the court finds the proceeding has resulted in substantial benefit to the corporation). These attorney's fees have not been challenged and are not at issue in this case.

11

What is at issue, however, is whether ESS can recover as damages for its successful breach of fiduciary duty claim the $92,000 in attorney's fees the corporation paid for Matthews and Matt's litigation expenses. These attorney's fees were not incurred solely on the breach of fiduciary duty claim against Matthews and included fees related to other causes of action in the suit, including DeNucci's nonsuited claims against Matt.

On appeal, DeNucci's sole argument for recovering these fees is that Matthews breached his fiduciary duties to ESS by improperly authorizing the corporation to pay these expenses without following the appropriate procedures for indemnification in ESS's bylaws, including failing to provide ESS with written affirmation of his good faith belief that he met the standard of conduct necessary for indemnification. Thus, DeNucci reasons that Matthews breached his fiduciary duties by improperly causing ESS to indemnify its officers without following the appropriate procedures for indemnification, and the damages proximately caused by that breach of fiduciary duty were the attorney's fees paid by ESS.

DeNucci, however, failed to plead this theory of liability at trial. Rather, DeNucci's live pleadings at trial alleged Matthews had breached his fiduciary duties by increasing officer salaries, distributing non-existent profits, and incurring unauthorized debt. The pleadings did not allege improper indemnification as a basis for his breach of fiduciary duty claim. In fact, the pleadings do not mention the bylaw provisions related to indemnification nor Matthews's alleged improper advancement of indemnification funds. "A party may not be granted relief in the absence of pleadings to support that relief." *See Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). Moreover, DeNucci failed to present this theory of recovery to the trial court. Rather,

12

DeNucci's arguments at trial mirrored his pleadings. During closing arguments, DeNucci's counsel asked the jury to award attorney's fees on the breach of fiduciary duty claim because Matthews's undisclosed borrowing and distribution of nonexistent profits had caused ESS to incur attorney's fees in this litigation. Counsel did not argue that attorney's fees should be awarded because Matthews had breached his fiduciary duties by failing to follow proper indemnification procedures. Likewise, when asked by the trial court to respond to the appellees' motion to modify the award of attorney's fees, DeNucci responded that the fees were recoverable because the litigation could have been avoided if Matthews had not breached his fiduciary duties by distributing non-existent profits. Again, even after a direct request from the trial court, DeNucci failed to argue that the attorney's fees were recoverable based on improper indemnification.

We therefore cannot conclude DeNucci has shown an abuse of discretion by the trial court in refusing to award attorney's fees based on a theory of recovery he failed to plead or otherwise present to the trial court. *See In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) (to preserve issue for appellate review, party must present to trial court timely request, motion, or objection, state specific grounds therefor, and obtain ruling). Accordingly, we overrule DeNucci's third issue on appeal and have disposed of all of DeNucci's appellate issues.

**Admission of DeNucci's Damages Model**

Moving to the issues raised on cross-appeal, the appellees first contend that the trial court abused its discretion in admitting DeNucci's damages testimony because he failed to disclose the expert damages model on which he relied at trial. The appellees, however, failed to object to DeNucci's damages testimony on this ground. Without a timely objection, the appellees

13

have waived any error in the admission of the testimony. *See* Tex. R. App. P. 33.1(a)(1) (to preserve error, party must present complaint to trial court via timely objection or request and obtain a ruling). Moreover, the expert's damages model was admitted as an exhibit at trial without objection. *Schwartz v. Forest Pharms., Inc.*, 127 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (error in admitting evidence is cured when same evidence comes in elsewhere without objection). Accordingly, we conclude the appellees failed to preserve error for their first issue on appeal.

### DeNucci's Retention of Distributions

At trial, there was evidence that the Board members—Matthews, Matt, and DeNucci—had assented to $73,000 in distributions that exceeded the company's profits. There was also evidence that ESS had stopped paying its vendors to fund the distributions and did not have sufficient funds to pay its outstanding liabilities. At trial, Matthews testified that, as the president and treasurer of ESS, he was "the only person who made [the] determination about how much and when to pay distributions." He testified further that he had represented that distributions were being made from profits, and that it was "reasonable" for the other Board members "to think that the distributions that were being made were based on the actual profit of the company." During cross-examination, Matthews admitted that the distributions had been "inappropriate." He further admitted that the distributions had rendered ESS insolvent, meaning unable to pay its debts as they became due. According to the auditor's report, the total excess distributions paid to each shareholder were: (1) $37,230 to Matthews; (2) $29,000 to DeNucci; and (3) $6,570 to Matt. None of the three shareholders, however, has returned these excess distributions to ESS.

14

Rather, DeNucci retained his distributions but sued Matthews for breach of fiduciary duty and sought disgorgement of Matthews's distributions as an element of damages. The appellees, in turn, countersued DeNucci for breach of fiduciary duty and sought disgorgement of DeNucci's distributions as damages. Alternatively, the appellees alleged that DeNucci had ratified the distributions by failing to return his portion to ESS, and therefore, no shareholder was required to return the distributions. The jury found in favor of DeNucci, finding that he had complied with his fiduciary duties to ESS. On the other hand, the jury found that Matthews had breached his fiduciary duties and awarded against him the $37,000 he had received in excess distributions.

On appeal, the appellees contend that ESS—as a matter of law—is entitled to recover from DeNucci the distributions he received. Alternately, the appellees contend that DeNucci's retention of the distributions constituted ratification as a matter of law, and thus, no shareholder is required to return their distributions.[3] We disagree with both contentions.

### 1.    DeNucci's Liability as Director for Wrongful Distributions

We first address the appellees' contention that ESS is entitled as a matter of law to recover the distributions it made to DeNucci. Although not raised by the parties on appeal, the Legislature has prescribed exclusive statutory remedies to redress the injury caused to a corporation when a director approves or a shareholder receives a prohibited distribution. *See* Tex. Bus. Orgs.

---

[3] The appellees preserved error for these issues through a motion for new trial, but on appeal, they ask the Court to render judgment rather than remand for a new trial. We have held that "omission of an explicit prayer for a remand in [an] appellant's brief does not waive his entitlement to such relief or limit our power to award it . . . if we sustain any of his issues on appeal." *Majeed v. Hussain*, No. 03-08-00679-CV, 2010 WL 4137472, at *8 (Tex. App.—Austin Oct. 22, 2010, no pet.) (mem. op.).

15

Code §§ 21.316(d) (Liability of Directors for Wrongful Distributions) ("[L]iability imposed under [the statute] is the only liability of a director to the corporation or its creditors for authorizing a distribution that is prohibited . . . ."), 21.318 (Contribution From Certain Shareholders and Directors) ("[L]iability provided by [the statute] is the only liability of a shareholder to the corporation . . . for accepting or receiving a distribution by the corporation that is prohibited . . . ."). Prohibited distributions are defined to include distributions that, as here, render the corporation insolvent—defined as unable to pay its debts as they become due in the ususal course of business. *See id*. §§ 1.002(40), 21.303(b)(1).

The key for liability under the statute is not whether the director retained a prohibited distribution, but whether the director should suffer liability for authorizing the distribution. *See id*. § 21.316. Pursuant to the statute, a director is not liable to the corporation for a prohibited distribution if, in voting or assenting to the distribution, the director relies in good faith with ordinary care on statements prepared or presented by an officer or employee of the corporation. *Id*. § 21.316(c). Here, Matthews admitted at trial that—as the president and treasurer of ESS—he had made representations to DeNucci regarding the profitability of the company and that DeNucci had relied in good faith on these representations in assenting to the distributions. Accordingly, we cannot conclude that appellees have established as a matter of law that ESS is entitled to recover against DeNucci for approving the distributions.

### 2.     DeNucci's Liability as Shareholder

With regard to DeNucci's receipt of the distributions as a shareholder, the Legislature has provided that a shareholder shall be liable for a wrongful distribution only if the shareholder

16

"accepted or received the wrongful distribution knowing that it was prohibited." *See id*. § 21.318(a), (c). Upon such proof, a director who is held liable for approving a wrongful distribution is "entitled to receive contributions from shareholders who accepted or received the wrongful distribution knowing that it was prohibited." *Id*. § 21.318(b). This "is the only liability of a shareholder to the corporation . . . for accepting or receiving a distribution by the corporation that is prohibited." *Id*. § 21.318(c).

Here, however, Matthews neither pleaded nor proved a contribution claim against DeNucci for accepting a distribution he knew was prohibited. Moreover, there was no evidence at trial that DeNucci accepted or received the distributions knowing they would render the corporation insolvent. As such, we cannot conclude the appellees have shown as a matter of law that DeNucci is liable for the distributions he received as a shareholder.

### 3. Ratification

In the alternative, appellees contend that DeNucci's retention of the distributions as a shareholder constituted a ratification of the distributions as a matter of law. "It is the general rule in Texas that transactions between corporate fiduciaries and their corporation are capable of ratification by the shareholders." *See General Dynamics v. Torres*, 915 S.W.2d 45, 50 (Tex. App.—El Paso 1995, writ denied). Ratification, however, is only effective when the officer has fully disclosed all of the material facts of the transaction to the shareholders. *Id*. Here, as detailed more fully above, there was evidence at trial that DeNucci was not aware of Matthews's conduct when he received his distributions. After he was informed that ESS had been making wrongful distributions, the evidence at trial showed that DeNucci immediately condemned Matthews's conduct, and shortly thereafter,

17

initiated this suit. At trial, the jury was instructed on ratification but failed to find that DeNucci had ratified Matthews's conduct after all material facts were fully disclosed to him.

On appeal, the appellees contend DeNucci's retention of his distribution proceeds constituted ratification of the transaction as a matter of law and precludes Matthews's liability as a director of ESS. The Legislature, however, in prescribing the exclusive remedies for holding a director liable for a wrongful distribution did not include ratification or retention of the distributions by a shareholder as an affirmative defense to a director's liability. *See* Tex. Bus. Orgs. Code § 21.316 (providing statutory affirmative defense for director who authorizes prohibited distribution when director relies in good faith with ordinary care on certain information but not providing affirmative defense when shareholder retains wrongful distribution). Rather, the Legislature provided for disgorgement of a shareholder's distribution only when the shareholder "accepted or received the wrongful distribution knowing that it was prohibited." *Id*. § 21.318(a), (c). Accordingly, we cannot conclude that DeNucci's retention of the distributions negated Matthews's statutory liability.

Moreover, we note that other appellate courts have found that a director who engages in self-dealing conduct cannot assert shareholder ratification as a defense to a transaction barred by statute or public policy. *See Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.*, 779 S.W.2d 474, 478 (Tex. App.—El Paso 1989, writ denied) ("[A]s with other acts involving interested directors, the shareholders of the corporation ordinarily can ratify the transaction; the ratification is valid unless the transaction itself violates a statute or public policy."); *Pruitt v. Westbrook*, 11 S.W.2d 562, 565 (Tex. Civ. App.—Fort Worth 1928, no writ) ("[B]ody of shareholders can ratify and confirm any act, done by the directors unless the corporation is, by . . . governing

18

statute . . . precluded from doing it in the first instance."). Here, ESS was prohibited by statute from making distributions that rendered the company insolvent. *See* Tex. Bus. Orgs. Code § 21.303(b).

Based on the foregoing, we conclude that the appellees have failed to prove, as a matter of law, that ESS is entitled to recover its distributions to DeNucci or that his retention of the distributions negated Matthews's liability. We overrule the appellees' second and third issues on cross appeal.[4]

## Interest Charges Awarded as Damages

After DeNucci prevailed on his derivative breach of fiduciary duty claim against Matthews, the trial court awarded ESS—in accordance with the jury's verdict—$39,783 in damages for interest charges accrued by ESS. In their fourth issue, appellees contend the award was excessive. We agree.

The standard of review for an excessive damages complaint is factual sufficiency of the evidence. *See Rose v. Doctors Hosp.*, 801 S.W.2d 841, 847–48 (Tex. 1990). The court of appeals should employ the same test for determining excessive damages as for any factual sufficiency question. *See Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986). When considering a

---

[4] On appeal, the appellees filed a motion to dismiss DeNucci's derivative claims on the grounds that his retention of the distributions rendered him unable to fairly and adequately represent the interests of the corporation. *See* Tex. Bus. Orgs. Code § 21.552 (shareholder may not institute derivative proceeding unless the shareholder fairly and adequately represents interests of the corporation). The Legislature has enacted special rules to allow shareholders in a closely held corporation, such as ESS, to more easily bring a derivative suit on behalf of the corporation. *See id*. § 21.563(b); *see also Ritchie v. Rupe*, 443 S.W.3d 856, 880–81 (Tex. 2014). Pursuant to these rules, "shareholders in a closely held corporation . . . can bring a derivative action without having to prove that they fairly and adequately represent the interests of the corporation." *Ritchie*, 443 S.W.3d at 881. We overrule the appellees' motion to dismiss.

factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *See id.* When reversing a trial court's judgment for factual insufficiency, the court of appeals must detail all the evidence relevant to the issue and clearly state why the jury's finding is factually insufficient or so against the great weight and preponderance of the evidence that it is manifestly unjust. *See Ellis Cnty. State Bank v. Keever*, 888 S.W.2d 790, 794 (Tex. 1994).

Here, the jury found that Matthews's failure to comply with his fiduciary duties had caused ESS to incur $39,783 in interest charges "on the factoring agreement and other interest charges." At trial, DeNucci had submitted a damages model seeking an award of $39,783 for interest charges accrued by ESS. The damages model represented that ESS had incurred these charges during the years 2007–2009 on interest charged for "the factoring agreement and other interest charges." DeNucci and his expert witness testified that the "other interest charges" arose from ESS's Frost notes, credit card debt, and "other miscellaneous charges."[5]

On appeal, DeNucci advances several theories of liability for recovering as damages the interest accrued by ESS on these debts. DeNucci first contends that if Matthews had not breached his fiduciary duties by incurring two new debts—the factoring agreement and the $20,000 extension on the Frost note, ESS would not have incurred interest charges on those debts. With regard to the

_____

[5] The trial court additionally awarded against Matthews, in accordance with the jury's verdict, $13,600 in interest charges accrued on ESS's loan from DeNucci as a separate category of damages. The damages for the DeNucci loan have not been appealed and are not addressed in this opinion.

20

remaining interest charges, DeNucci's damages theory was that if Matthews had not breached his fiduciary duties by seeking and obtaining salary increases and prohibited distributions, then ESS would have had a greater cash flow and been able to retire its debt by 2008. Thus, DeNucci reasons that Matthews is liable for these interest charges because ESS—but for Matthews's obtaining the salary increases and distributions—would have been able to pay off its debts sooner and avoid these interest charges.

On appeal, the appellees contend the award is excessive because there is factually insufficient evidence that Matthews's breach of fiduciary duty caused ESS to incur all of these interest charges. The appellees concede there is a causal link between Matthews's breach of fiduciary duty and the interest incurred by ESS for the two new debts, the factoring agreement and the Frost extension. The appellees, however, contend that there is no causal link between Matthews's breach of fiduciary duty and the interest incurred by ESS for prior debts of the company.

We agree with the appellees that the evidence is factually sufficient to support a damages award for the interest charges accrued by ESS on the factoring agreement and Frost extension but insufficient to support the full amount of interest awarded by the jury as damages. DeNucci's damages theory for the remaining interest charges was premised on two theories of liability against Matthews: the salary increases and prohibited distributions. We cannot conclude, however, that either of these theories of liability establishes the necessary causal link between Matthews's breach of fiduciary duty and the interest awarded.

First, with regard to the distributions, the Legislature has provided that a director who authorizes a prohibited distribution may be liable for the amount of the distribution. *See* Tex. Bus. Orgs. Code § 21.316. This, however, is "*the only liability* of a director to the corporation . . . for

21

authorizing a distribution that is prohibited." *Id.* (emphasis added). As the Legislature has provided an exclusive remedy, Matthews's authorization of the distributions cannot be used as a ground for awarding additional damages outside the remedies prescribed by the statute. *See Holmans v. Transource Polymers, Inc.*, 914 S.W.2d 189, 192 (Tex. App.—Fort Worth 1995, writ denied) ("Under Texas law, in a situation where common law and a statute both provide remedies, the statutory remedy is cumulative of the common-law remedy unless the statute expressly or impliedly negates or denies the right to the common-law remedy.").

With regard to the salary increases, the jury failed to find that Matthews's breach of fiduciary duty proximately caused the salary increases. Unchallenged jury findings, like findings of fact in a non-jury trial, are binding on appeal. *See Wilson v. Texas Parks and Wildlife Dep't*, 853 S.W.2d 825, 832 (Tex. App.—Austin 1993), *rev'd on other grounds*, 886 S.W.2d 259 (Tex. 1994). As the jury found no causal link between Matthews's alleged breach of fiduciary duty and the increased salaries, the record necessarily does not support a causal link between Matthews's breach of fiduciary duty and interest charges caused by the increased salaries. Accordingly, we conclude there is factually insufficient evidence of causation to support the full award of interest.

When there is some evidence of damages but not enough to support the full amount awarded, we may either suggest a remittitur or remand to the trial court for a new trial. *See Akin, Gump, Strauss, Hauer & Feld*, 299 S.W.3d at 124. In this case, the evidence is sufficient to support an award for the interest charges incurred on the factoring agreement and Frost extension but insufficient to support the full amount awarded. We cannot, however, conclusively ascertain from the record how much of the $39,783 awarded in interest charges is solely attributable to the factoring

22

agreement and the Frost extension. Accordingly, remittitur is not an available remedy in this case. *See Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 669 (Tex. 1996) (remittitur not available remedy when damages cannot be established as a matter of law). Therefore, we reverse the $39,783 awarded for interest charges and remand to the trial court for determination of the amount of the award attributable to the factoring agreement and Frost extension and for rendition of judgment accordingly. *See* Tex. R. App. P. 44.1(b).[6]

## Declaratory Relief

In their last issue, the appellees challenge the trial court's declaratory judgment construing the buy-out provision of the stock purchase agreement. In 2000, Matthews incorporated ESS and was its only shareholder. Six years later, DeNucci learned of the business and sought to become a shareholder. At the time the parties entered into the agreement, the evidence at trial showed that ESS was a small, struggling corporation with no assets. To effectuate DeNucci's purchase of forty percent of the corporation's stock, ESS and DeNucci entered into a stock purchase

---

[6] We may not order a separate trial solely on unliquidated damages if liability is contested. *See* Tex. R. App. P. 44.1(b); *but see Browning Oil Co. v. Luecke*, 38 S.W.3d 625, 647 (Tex. App.—Austin 2000, pet. denied) (holding good cause existed to suspend application of this rule when interests of justice warranted a new trial on issue of damages alone). Here, however, Matthews concedes he is liable for the interest charges incurred on the factoring agreement and the Frost extension. Moreover, the amount of interest incurred on these loans "can be determined with exactness . . . by arithmetical process." *See Rycade Oil Corp. v. Lasater*, 375 S.W.2d 556, 557 (Tex. Civ. App.—Austin 1964, no writ) (internal quotation marks omitted) ("Liquidated means made certain as to what and how much is due, and a liquidated claim is one which can be determined with exactness from the agreement between the parties, or by arithmetical process, or by the application of definite rules of law."); *see also Ortiz Oil Co. v. Geyer*, 159 S.W.2d 494, 497 (Tex. 1942) (concluding that demand of royalty owners could be calculated on undisputed factors, such as amount of oil produced and price of oil, and was liquidated demand). Because liability is uncontested and the amount of damages may be calculated with exactness, we remand only on the issue of damages related to the interest charges on the factoring agreement and Frost extension.

23

agreement. Pursuant to the agreement, DeNucci agreed to pay ESS $72,000 in exchange for his

4,000 shares. The agreement additionally provided Matthews and Matt—who were the only other

shareholders and also employees of ESS—the option, after two years, to purchase back 1,000 of

those shares from DeNucci.

At issue is what the price should be for those 1,000 shares. The agreement provided

that the cost of the shares should be calculated by:

> [taking] the *total revenue earned* by the Corporation during the twelve months
> preceding the date of the notice given to exercise the option, and this amount shall
> then be multiplied by 3 (three) and then multiplied again by the percentage of the
> total outstanding stock of the Corporation which is the subject of the option purchase.

(emphasis added). The parties dispute whether the phrase "total revenue earned," which is not

defined in the agreement, means: (1) total gross revenue, i.e, the total revenue received by ESS

without deductions for expenses; or (2) total net revenue, i.e., the total revenue received by ESS

minus deductions for expenses.

Finding the phrase ambiguous, the trial court submitted to the jury a question asking

whether the parties had intended for the phrase to mean "total gross revenue" or "total net revenue."

After hearing testimony from all parties, the jury found that the parties had intended for the phrase to

mean total gross revenue. On appeal, the appellees do not challenge the sufficiency of the evidence

supporting the jury's finding. Rather, the appellees contend that the only reasonable interpretation

of the phrase "total revenue earned" is "total net revenue," and thus, the trial court erred in submitting

the issue to the jury because the contract is unambiguous. The appellees contend in their brief that

24

interpreting the phrase as "total gross revenue" is unreasonable because such an interpretation "would impose an absurd valuation on DeNucci's stock."

Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered. *National Union Fire Ins. Co. v. CBI Indus., Inc*., 907 S.W.2d 517, 520 (Tex. 1995). A contract is not ambiguous if it can be given a definite or certain meaning as a matter of law. *Id*. On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, which creates a fact issue on the parties' intent. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Forbau v. Aetna Life Ins. Co*., 876 S.W.2d 132, 134 (Tex. 1994). For an ambiguity to exist, both interpretations must be reasonable. *See CBI Indus.*, 907 S.W.2d at 520.

When a term in a written agreement is not specifically defined, as in this agreement, the term should be given its plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used it in a technical or different sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Applying this rule of construction, the term "revenue" is generally understood to mean "gross income or receipts." *See* Black's Law Dictionary 1433 (9th ed. 2009). Thus, we cannot conclude that it is unreasonable to interpret the phrase "total revenue earned" as meaning total gross revenue.

Moreover, while we cannot presume that a contract would impose an absurd or impossible condition on one of the parties, *see Citizens Nat'l Bank v. Texas & Pac. Ry. Co.*,

150 S.W.2d 1003, 1006 (Tex. 1941), we cannot conclude that this interpretation is absurd in light of the circumstances present when the parties entered the contract. First, we note that this provision grants Matthews and Matt the right to force DeNucci to sell his stock. Moreover, DeNucci was the only non-salaried shareholder at ESS. Under the appellees' interpretation of the contract, DeNucci's stock would be valued based on the gross revenue of ESS minus expenses, which would include the salary expenses for Matthews and Matt. Thus, if the salaries for the other two shareholders consumed all of ESS's revenue, DeNucci's stock would be worthless. Under these circumstances, we cannot conclude that it was unreasonable for the parties to base the value of the stock on gross, rather than net, revenue.

The appellees contend on appeal that this result is unfair because, under this interpretation, the value of DeNucci's stock has risen dramatically in the last six years. We, however, must look at the circumstances existing when the parties entered into this agreement, not from hindsight. *See CBI Indus.*, 907 S.W.2d at 520. We overrule the appellees' fifth issue on cross-appeal.

**CONCLUSION**

We affirm the trial court's judgment, except as to the $39,783 awarded to ESS for interest charges. We reverse this portion of the trial court's judgment and remand to the trial court for further proceedings consistent with this opinion. *See* Tex. R. App. P. 44.1.

26

_____

Scott K. Field

Before Justices Puryear, Pemberton and Field

Affirmed in Part; Reversed and Remanded in Part

Filed:   April 23, 2015