

# IN THE
# TENTH COURT OF APPEALS

## No. 10-14-00244-CV

**RUSSELL CALDWELL D/B/A
RW CALDWELL CONSTRUCTION,**

**Appellant**

**v.**

**JACKIE WRIGHT,**

**Appellee**

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 85781

---

## MEMORANDUM OPINION

---

Jackie Wright and Russell Caldwell d/b/a RW Caldwell Construction entered into a contract for the remodel of Wright's home. After Wright paid Caldwell at least $5,000 more for the remodel than the contract price and the job was not yet 50 percent complete, the business relationship between the two ended. Wright eventually sued Caldwell for breach of contract, violation of the Deceptive Trade Practices Act, breach of express and implied warranties, fraud, and breach of fiduciary duties. Caldwell, in turn, sued Wright

for breach of contract. After a jury trial, Wright prevailed on her breach of contract, DTPA, and fraud claims. Although the jury found Wright breached the contract as well as Caldwell, no damages were awarded to Caldwell. After trial, Wright elected to recover on her DTPA claim. A hearing was held as to attorney's fees, and the trial court rendered judgment for Wright. Because the trial court erred as to the determination of attorney's fees, we reverse the trial court's judgment as to the award for attorney's fees and remand that portion of the case for further proceedings. To the extent not reversed and remanded, we affirm the trial court's judgment.

Caldwell raises five issues on appeal regarding Wright's contract, DTPA, and fraud claims, and the trial court's award of attorney's fees. We first discuss Caldwell's issues regarding Wright's DTPA claim.

## SUFFICIENCY OF THE EVIDENCE—DTPA

In his fourth issue, Caldwell argues that there was insufficient evidence that Caldwell engaged in false, misleading, or deceptive acts, which are the very basis for a DTPA claim. Although Caldwell argued in his brief that there was "no evidence" or that there was not "any evidence" of false, misleading, or deceptive acts, we construe his argument as a challenge to the factual sufficiency of the evidence which was the only sufficiency argument properly preserved.[1]

When reviewing a jury verdict to determine the factual sufficiency of the evidence,

---

[1] The issue was preserved in his motion for new trial. *See* TEX. R. CIV. P. 324(b).

we consider and weigh all the evidence and "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We are not, however, a factfinder, and thus, we may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

"The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *see* TEX. BUS. & COM. CODE ANN. § 17.50(a) (West 2011); *see also id*. §§ 17.45(5), 17.46(b). In our review of a DTPA claim, we must liberally construe and apply the statute to promote the underlying goals of the DTPA, which include protecting consumers against false, misleading, and deceptive business practices and unconscionable actions. *See* TEX. BUS. & COM. CODE ANN. § 17.44(a) (West 2011); *Latham v. Castillo*, 972 S.W.2d 66, 68 (Tex. 1998).

The phrase "false, misleading, or deceptive act" was defined in the charge to the jury as "any of the following:"

> a. representing that an agreement confers or involves rights, remedies or obligations which it does not have or involve or which are prohibited by law;

> b. falsely representing that work or services have been performed on, or parts replaced in goods when the work or services were not preformed (sic) or the parts replaced; and

> c. failing to disclose information concerning goods or services which was known at the time of the transaction when such failure to

disclose information was intended to induce Plaintiff into a transaction into which the Plaintiff would not have entered had the information been disclosed.

There was no objection to the charge regarding this definition, and thus, the sufficiency of the evidence is measured against the charge as submitted. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000).

At trial, testimony showed that, per an oral agreement with Wright, Caldwell would provide Wright with invoices for completed work. In his testimony, Caldwell agreed, however, that he had sent Wright invoices for work that was not complete. Some incomplete work for which invoices were submitted by Caldwell included taping, bedding, and texturing of the sheetrock and setting a post for the outdoor kitchen. Caldwell attempted to minimize his actions by asserting that Wright was never actually billed for this incomplete work. He agreed, though, that the invoices which included the incomplete work totaled the amount Wright paid to him by check on May 2, 2012. Also, Caldwell testified that Wright agreed to pay Caldwell a ten percent builder's fee. However, on at least two instances, Caldwell "rounded up" the costs so that his builder's fee would be higher. Additionally, Caldwell ordered and billed Wright for a third more roofing shingles than she needed and almost 3 times more studs for framing than she needed. Further, Caldwell presented an exhibit at trial indicating he paid the bricklayer for the bricklayer's work on the addition to Wright's house. And Caldwell claimed as part of his suit that Wright had failed to reimburse him for this amount that had been

paid to the bricklayer. However, the bricklayer testified that his entire fee, the amount Caldwell was trying to recover from Wright had not been paid by Caldwell as Caldwell claimed.

After considering and weighing all of the evidence as measured against the charge submitted and liberally construing and applying the deceptive trade practices statute, we conclude that, at the very least, the evidence shows that Caldwell falsely represented that work or services had been done when it had not, in fact, been done. Thus, the verdict of the jury is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, and the evidence is sufficient to show that Caldwell engaged in false, misleading, or deceptive acts.

Caldwell's fourth issue is overruled.

## ECONOMIC LOSS RULE VS. DTPA

Caldwell argues in his first issue that the trial court erred in entering a judgment in favor of Wright for damages found by the jury on Wright's DTPA claim because, based on the evidence, Wright's claim is a contract claim, not a tort claim; and as such, a tort claim under the DTPA would be precluded by the economic loss rule. In other words, Caldwell argues Wright cannot recover damages for her DTPA claim because the economic loss rule precludes the recovery of such damages in this case which is merely a breach of contract case.

The economic loss rule[2] is a court-adopted rule for determining whether a party is barred from seeking damages in certain actions. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011); *Tarrant Cnty. Hosp. Dist. v. GE Automation Servs.*, 156 S.W.3d 885, 895 (Tex. App.—Fort Worth 2005, no pet.). The rule generally precludes recovery in a tort action for purely economic losses resulting from the failure of a party to perform under a contract or when losses arise from the failure of a product and the damage or loss is limited to the product itself. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (contract); *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007) (product); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991) (contract); *Signal Oil & Gas Co. v. Universal Oil Prods.*, 572 S.W.2d 320, 325 (Tex. 1978). The economic loss rule is a not an affirmative defense which needs to be pled. *Equistar*, 240 S.W.3d at 868. "The rule is a consideration in measuring damages in a case [to which it applies]." *Id.* Thus, a party can fail to preserve a complaint for appellate review regarding the application of the rule by failing to object to the measure of damages as set out in the court's charge. *Id.*

Citing the Texas Supreme Court opinion in *Equistar*, Wright argues Caldwell has failed to preserve his economic loss rule argument for our review. *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864 (Tex. 2007). In *Equistar*, Dresser was sued for damages

---

[2] The Texas Supreme Court has recognized this phrase as "something of a misnomer" because there are several more limited rules that govern the recovery of economic losses in selected areas of the law. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011).

caused to a compressor and parts of Equistar's plant due to the failure of a part for the compressor provided by Dresser. Equistar also sued for replacement cost of the part. One issue decided by the Texas Supreme Court was whether Dresser preserved its complaint on appeal that the application of the economic loss rule barred recovery by Equistar. *Id*. at 866. The court of appeals held that Dresser had preserved its complaint through its no-evidence objections on directed verdict and through its motion for judgment n.o.v. *Id*. at 867. However, the Texas Supreme Court found that, regardless of whether Dresser's no-evidence objections on directed verdict or its motion for judgment n.o.v. "necessarily encompassed" the economic loss rule, Dresser had not preserved its complaint for appellate review because it had failed to object that the damages question presented in the trial court's charge did not properly limit damages pursuant to the economic loss rule. *Id*. at 868. Dresser failed to "clearly and distinctly" make the trial court aware of a contention that the economic loss rule applied to bar Equistar from recovering tort damages for injuries to the compressor. *Id*.

Caldwell counters that *Equistar* is not on point because it was a products liability case and because the single damage question covered multiple causes of action. The Texas Supreme Court did not limit its holding in *Equistar* to only products liability cases. And, because an instruction on the economic loss rule helps determine the proper measure of damages (*i.e.* the kinds of damages allowed), it makes sense to apply the preservation requirement to all available applications of the rule. *See* ARTICLE:

Applying the Economic Loss Rule in Texas, 64 Baylor L. Rev. 204 (winter 2012). Similarly, it makes no difference that in *Equistar*, a single damage question was applied to multiple theories of recovery, whereas in this case, separate damage questions were submitted for each theory of recovery. When the economic loss rule acts as a bar to the recovery of damages for tort claims, even a generally "proper" damage question would be improper under the circumstances and thus, must be objected to.

Caldwell did not object to any of the damages questions. As in *Equistar*, to preserve the issue for review, Caldwell was required to object to the damage questions in the charge which Caldwell contends would, under an application of the economic loss rule, submit an improper measure of damages to the jury. *See Equistar*, 240 S.W.3d at 868; ARTICLE: Applying the Economic Loss Rule in Texas, 64 Baylor L. Rev. 204, 209 n. 27 (winter 2012). Because Caldwell did not object, he did not preserve his argument for appellate review.

Caldwell also argues that *Equistar* does not apply because the question presented on appeal in this case is whether the evidence supported a tort claim separate from Wright's contract claim, not whether the economic loss rule bars a specific type of damages. However, Caldwell's first issue focuses on whether Wright can meet the two criteria established by the Texas Supreme Court to determine whether the economic loss rule bars recovery for tort damages in a contract case. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) (the nature of the injury criterion—when the injury is only

the economic loss to the subject of a contract itself); *see also Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (the source of the duty criterion—when the duty allegedly breached is independent of the contractual undertaking). Thus, Caldwell's argument is essentially that the economic loss rule bars Wright's recovery for damages. Because Caldwell argues the applicability of the economic loss rule, the preservation requirements of *Equistar* apply.

As we noted previously, Caldwell did not object to the damage questions in the charge. Thus, his first issue is not preserved and is overruled.

## CONTRACT DAMAGES

In his third issue, Caldwell contends there was no evidence to support Wright's contract damages. Wright argues that because Wright elected to recover under her DTPA cause of action, and if we overrule Caldwell's first issue regarding the DTPA cause of action, we need not discuss the adequacy of Wright's evidence supporting the amount the jury awarded for contract damages. Wright is correct. Because we overruled Caldwell's first and fourth issues regarding Wright's DTPA cause of action, we need not discuss the adequacy of Wright's evidence supporting the amount awarded for contract damages.

However, in his reply brief, Caldwell asserts that he also complained in his third issue about the sufficiency of the evidence to support damages awarded for Wright's DTPA and fraud claims. Caldwell argues in the reply brief that Wright's damages were

not from "independent violations" of the DTPA or any fraud. To the extent this argument is a sub-issue within Caldwell's third issue, Caldwell simply reframes his argument about the application of the economic loss rule as to Wright's DTPA claims which we have already held was not preserved. Accordingly, Caldwell's third issue is overruled.[3]

### CONTRACT—BREACH BY WRIGHT

In his second issue, Caldwell argues that Wright cannot recover on her breach of contract claim because Wright materially breached the contract and her breach caused all of the damages she was awarded.[4] Again, Wright contends that because Wright elected to recover under her DTPA cause of action, we need not discuss whether Wright breached the contract. Wright is correct. Because we overruled Caldwell's first and fourth issues regarding Wright's DTPA cause of action, we need not discuss whether Wright breached the contract or the impact, if any, on the trial court's judgment. Accordingly, Caldwell's second issue is overruled.

### ATTORNEY'S FEES

Lastly, Caldwell asserts that Wright failed to properly segregate her attorney's fees between her various claims; and thus, a remand to the trial court is required. Specifically, Caldwell argues that Wright's attempt to segregate her attorney's fees was inadequate

---

[3] As with the contract damages, we need not discuss the sufficiency of the evidence regarding fraud damages because Wright elected to recover only on her DTPA claim.

[4] We note the charge did not inquire about a "material" breach. Further, it did not inquire about which breach, Caldwell's or Wright's, occurred first.

because not only did Wright fail to segregate fees for claims where fees were not recoverable, she also failed to segregate fees for causes of action pursued but on which she did not prevail.

A prevailing party must segregate recoverable from unrecoverable attorney's fees in all cases. *Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007). If any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated. *Id*. at 313-14. When fees should be segregated and are not, a remand to the trial court is required. *See id*. at 314.

Wright and Caldwell agreed on the record during trial to submit the issue of the amount of attorney's fees to the trial court by affidavit. Wright's attorneys, Darrell W. Cook and Catherine Keith, submitted affidavits, post-verdict, detailing Wright's request for attorney's fees. According to the affidavits, Wright retained the firm of Darrell W. Cook & Associates in May of 2012 when Wright received a demand letter from Caldwell. Cook and Keith stated that from the onset, it was clear that the thrust of the case would be grounded in breach of contract and violations of the DTPA. Significant time and resources were expended within the first four months to settle the dispute between Wright and Caldwell. When mediation was unsuccessful, Wright and her attorneys

decided to file a lawsuit in September of 2012 against Caldwell.

Wright initially sued Caldwell for breach of contract. After significant time and resources were expended, Wright added, in April of 2013, a DTPA claim and claims for breach of implied and express warranties. Attorney's fees are recoverable for all of these claims. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2014) (contract); TEX. BUS. & COM. CODE ANN. § 17.50(d) (West 2011) (DTPA[5]); and *Med. City Dall., Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 63 (Tex. 2008); (express warranties). By August of 2013, Wright added her claims of fraud and breach of fiduciary duties. Attorney's fees are not recoverable for these claims. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) (fraud); *DeNucci v. Matthews*, 463 S.W.3d 200, 209 (Tex. App.—Austin 2015, no pet.) (fiduciary duty).

Wright submitted a request of $150,482.06 as reasonable attorney's fees in this case. An amount of $1,795 had been segregated as the amount of fees for the fraud and fiduciary relationship on which attorney's fees are not recoverable. Cook and Keith detailed in their affidavits[6] how much of their fee, starting in July of 2013 and including trial time, was attributed to those claims for which attorney's fees are not recoverable.

---

[5] A DTPA claim can include a claim for breach of implied warranties. *See Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987). Thus, attorney's fees may be recoverable for such a claim. We need not answer that question because the parties do not dispute whether attorney's fees for a breach of implied warranties claim under the DTPA could ever be recovered.

[6] Caldwell objected to both affidavits but his objections were impliedly overruled and he raises no issue on appeal regarding the propriety of that implied ruling.

These fees were adequately segregated. However, Wright did not prevail on her express or implied warranty claims[7] and her attorneys never discussed the amount of fees for those claims. When given the opportunity to explain whether those fees needed to be segregated, Wright's attorneys assured the trial court that those fees were segregated. The affidavits do not discuss those fees. Further, on appeal, Wright never discusses how fees for these claims were accounted for. She does not contend that the fees for the warranty claims did not need to be segregated nor does she contend that those fees were so intertwined with the claims on which she prevailed that the fees could not be segregated.

Accordingly, Caldwell's fifth issue is sustained only as to his argument that Wright failed to segregate fees for the warranties claims upon which Wright did not prevail.

**CONCLUSION**

Because we have sustained a portion of Caldwell's issue on attorney's fees, the trial court's judgment is reversed, in part, and this case is remanded to the trial court for further consideration only of the amount of attorney's fees to be awarded to Wright. To the extent the judgment is not reversed, it is affirmed.


TOM GRAY
Chief Justice

---

[7] The implied warranty claim was not even submitted to the jury.

Before Chief Justice Gray,
      Justice Davis, and
      Judge Walton[8]
Reversed and remanded in part, affirmed in part
Opinion delivered and filed August 10, 2016
[CV06]



---

[8] Hon. Ralph H. Walton, Jr, Judge of the 355th District Court of Hood County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (West 2013).